W. S. VOSBURG, Appellee, v. EDWARD B. MALLORY and EARL B. MALLORY, Appellants, J. P. CHRISTENSEN, Executor and Trustee, and J. P. CHRISTENSEN.

**Gifts Causa Mortis.** A gift *causa mortis* is one of personal property, made by a person in expectation of death the result of an existing illness, on condition that the property shall belong to the donee in case he survives the donor and the gift is unrevoked.

**Same:** WILLS: DISTINCTION. A gift *causa mortis* is distinguished from a will in the following particulars; a gift *causa mortis* may be by parol it must be in apprehension of impending death, and delivery is essential to its validity; while a will is ordinarily a written instrument not commonly made in view of impending death, and there is no delivery of the property willed until after death of the testator.

**Same:** GIFTS *inter vivos*: DISTINCTION. A gift *inter vivos* takes place by mutual consent, immediately and irrevocably in the donor's lifetime, and is distinguished from a gift *causa mortis* by the fact that the latter becomes effective only upon the death of the donor, as a result of his illness or peril then impending; but in either case actual or symbolical delivery is essential.

**Same:** EVIDENCE. The evidence in this action is held to establish a gift *causa mortis* of a note, and that such gift was not revoked by a prior will.

**Same:** It is also held that although the note was indorsed to another party, still as it was never delivered there was no completed gift; and even though the transaction amounted to a gift *causa mortis* it was revoked in the donor's lifetime and the note was given to plaintiff.

**Same:** GIFT BY WIFE: HUSBAND'S DISTRIBUTIVE SHARE. A gift *causa mortis* by the wife is valid although it may deprive the husband of his distributive share to that extent in the personal property of her estate.

*Appeal from Pottawattamie District Court.*—Hon. E. B. Woodruff, Judge.

Thursday, April 4, 1912.

This is a controversy over a note which plaintiff claims was given him by Mary E. Mallory, deceased, just prior to her demise. The trial court awarded the note to plaintiff, and defendants, Edward B. Mallory, husband of the deceased, and Earl B. Mallory, her son, appeal. Defendant Christensen is the maker of the note, and stands indifferent as between the other parties.—*Affirmed.*

*W. H. Killpack,* for appellants.

*Mayne & Hazelton,* for appellee.

Deemer, J.—Mrs. Mary E. Mallory died December 16, 1909, leaving surviving her husband, Edward B. Mallory, and a son, Earl B. Mallory, who are the principal defendants in the case. Plaintiff is a brother of the deceased. Deceased was the owner of a note for the sum of $532 (upon which note $100 had been paid), executed by defendant Christensen. This note was secured by mortgage upon real estate in the city of Council Bluffs. Plaintiff claims that deceased gave him the note on December 11, 1909, and that he was the owner thereof at the time of her death. On the other hand, defendants say that deceased was unsound of mind and incapable of making a gift at the time it is claimed the transfer was made; that the alleged gift was *causa mortis,* and can not be sustained, as against the claims of the surviving husband;. that the property was originally given to one of the defendants, and that this gift could not be recalled without the consent of the donee. Further claim is made that the gift was made with intent on the part of the donor to deprive

her husband of his distributive share in his wife's property.

Some of the questions presented are of fact, and some are purely legal questions arising from facts to be found or conceded. The first question arising out of the issues is the claim of incompetency of the donor. We have examined the testimony upon this proposition, and agree with the district court in its conclusion that defendants have not met the burden imposed upon them of showing the mental incapacity of the donor. Again, we fail to find sufficient testimony to establish the claim of actual fraud. Counsel differ upon the proposition as to whether the claimed gift was *causa mortis* or *inter vivos,* and also upon the effect of the gift upon the surviving husband's claim to distributive share. Inferentially appellants' counsel admits that, if the gift were *inter vivos,* the defendants have no just ground for complaint; so that we have to determine whether the claimed gift was *causa mortis* or *inter vivos.*

I. A gift *causa mortis* is defined to be a gift of personal property made by a person in expectation of death then imminent upon an essential condition that the prop-

1. GIFTS *causa mortis.* erty shall belong fully to the donee in case the donor dies as anticipated, leaving the donee surviving him, and the gift is not in the meantime revoked. 2 Schouler on Personal Property, section 135. "Story observes that by our law there can be no valid *donatio mortis causa* (1) unless the gift be with a view to the donor's death; (2) unless it be conditioned to take effect only on the donor's death by his existing disorder or in his existing illness; and (3) unless there be an actual delivery of the subject of the donation. 1 Story Eq. Jur. section 607a." 20 Cyc. note, page 1228.

A learned text-writer has made the following distinction between a gift *causa mortis* and a will: "A gift *causa mortis* is distinguished from a gift by will in the following particular: (a) A gift *causa mortis* may be made

by parol. An instrument in writing is ordinarily required
in the case of a will. (b) A gift *causa mor-*
*tis* must be made under apprehension of
impending death. A will is commonly made in view of
the fact of death, but not because of its immediate prox-
imity. (c) Delivery is essential to the validity of a gift
*causa mortis,* and the donee acquires title directly from the
donor. No delivery is ever had of property which is the
subject of gift by will until after the death of the testator,
and the legatee's title is derived from the executor." Gard-
ner on Wills, page 12, section 3. In *Trenholm v. Morgan,*
28 S. C. 268 (5 S. E. 721), the court said: "From
the nature of the *donatio* it is apparent that the infallible
test which must distinguish it from a testamentary gift
is delivery—change of dominion in *praesenti.* Without this
there is really nothing to distinguish it from an ordinary
testamentary bequest." In a sense they are both ambula-
tory in character; but a gift is claimed against the execu-
tor or administrator, while a legacy is claimed from him.
*Emery v. Clough,* 63 N. H. 552 (4 Atl. 796, 56 Am.
Rep. 543).

*2. Same: wills: distinction.*

A gift *inter vivos* takes place by mutual consent of
the giver who divests himself of the thing given in order
to transmit the title to the donee gratuitously, and the
donee who accepts and acquires the legal
title to it. It operates, if at all, in the do-
nor's lifetime, immediately and irrevocably.
It is a gift executed; and no further act of the parties and
no contingency is needed to give it effect. *Garner v. Fry,*
104 Iowa, 515.

*3. Same: gifts: inter vivos: dis- tinction.*

The distinction between the two kinds of gifts has
thus been stated: "(1) A *donatio causa mortis* must be
made in contemplation of the near approach of death with
the implied condition that it take effect absolutely only
upon the death of the donor, caused by a disorder from
which he is then suffering, or a peril which is then im-

pending, whereas by a gift *inter vivos,* completed by de-
livery, the property vests immediately and irrevocably in
the donee, and the donor has no more right or control over
it than any other person; and (2) at common law a man
might thus, and only thus, transfer property directly to his
wife." 20 Cyc. page 1230. This statement is well forti-
fied by the authorities cited.

Delivery is essential to either form of gift, but such
delivery may be to a third person for the donee.' *Stokes
v. Sprague,* 110 Iowa, 89; *Donover v. Argo,* 79 Iowa, 574.
There may be a constructive delivery in many cases where
actual manual tradition can not be made. *Wait v. Grubbe,*
43 Or. 406 (73 Pac. 206, 99 Am. St. Rep. 764). But in
every case of gift there must be either an actual or sym-
bolical delivery. *Packard v. Dunsmore,* 11 Cush. (Mass.)
282; *Stevens v. Stewart,* 3 Cal. 140.

Having distinguished the two kinds of gifts and
pointed out how they differ from a testamentary disposition
of property, we are now ready for the facts. Mrs. Mal-
4. Same: lory, the deceased, for a long time prior to
evidence. her death was affected with what the doc-
tors called elephantiasis, an incurable and loathsome disease,
causing a swelling and sloughing of one or both limbs.
The affliction causes much pain, and on account of its
toxic effects certainly results in death.' It is progressive
in character, and there seems to be no specific for it. De-
ceased was possessed of some money, the usual household
supplies and furniture, a number of pictures and paintings,
and one-half of the house and lot where she lived in addi-
tion to the note and mortgage in question. Her son Earl
was a drinking man, and she did not intend that either he
or her husband should have all of her property. On the con-
trary, she seemed to have had an affection for her brother,
the plaintiff herein, thought that he was not strong, and
never would be, that he had been overworked, and, with
the evident intention of assisting him, she wrote plaintiff

on March 18, 1909, inquiring as to the amount of the indebtedness upon his place, saying: "I got a mortgage coming due next Sep. I shant be here but I want it to go out of Ed & Jens reach. She will have the house and everything in it soon as I am buried—maybe—it costs $5.00 for a lawyer to come to the house & see me & two witnesses sign a paper. . . . I own half this property which is worth now $1,800 then I put $400.00 in the business & got kids note & first mortgage on this for than he wants to pay me off now so when I drop off he will move out. I got $1000 worth in paintings expect a man here to set market price on them. If I can get $500.00 for Daniel in the Lion's den he goes, & the chink will go on your place. I cant live but a short time and there is plenty left for Jen and her family." In another letter to plaintiff written August 16, 1908, she said: "You see I have got over $1,500 now in cash and property in my name. Ed has no claim on it. Not one cent of his wages has ever been paid on it. It is Kid's board and the cow money you gave me and interest."

Upon information that Mrs. Mallory was very ill, plaintiff came to Council Bluffs on December 11, 1909, and, upon going to his sister's home, found defendants Christensen and E. B. Mallory, the husband, and Mrs. Breece there. Soon a Mr. Campbell came in, and in the presence of Mr. Campbell and Mrs. Breece deceased talked to plaintiff about giving him the note and mortgage in question in order that he might use them or the proceeds thereof to pay the indebtedness upon his place. Plaintiff testified as follows regarding this transaction: "She spoke to me in the forenoon of December 11. She says: 'I have a note and mortgage. I ain't going to last long, and I want to help you out on your place with it.' She turned them over to me in the afternoon of the same day. I got them for her from a satchel under her bed, and I put them back in the satchel. She says: 'I want you to take

it and put it on your place when it is due. I can't last a great while anyway.' I says: 'It wouldn't be right for me to take it.' Here is this name on the back of it, 'Pay to the order of Earl B. Mallory, signed Mary E. Mallory.' I said: 'If I should take it in the shape it is, Ed. will claim I had taken the note and marked that off myself, and put my name on.' She said: 'What will you do, then?' I said: 'You had better scratch that off yourself, and write on it what had been received on it, and pay the balance to me, and have witnesses to it.' Then I said: 'In the case of any trouble that would show I didn't do it myself.' Mrs. Campbell was there at this conversation. Neither Mrs. Breece nor Mrs. Jackson was there at that time. I went over and got Mrs. Jackson. Mrs. Mallory said: 'I can't sit up alone. You will have to hold me.' So I got under the pillows, and held her up in bed while she wrote it. She scratched out the indorsement at that time." The note which was introduced in evidence shows an indorsement to Earl B. Mallory signed by the deceased, but this indorsement seems to have been erased by the running of lines through the name, "Earl B. Mallory." it also contains this indorsement: "Pay balance to W. S. Vosburg. Mary E. Mallory. C. M. Jackson, L. J. Breece." It is agreed that these last two names were placed upon the note as witnesses to Mrs. Mallory's signature. Plaintiff's testimony is substantially corroborated by that of Mrs. Breece and by C. M. Jackson, and it is practically agreed that the note and mortgage were delivered to plaintiff on the afternoon of December 11, 1909. To both witnesses she declared that she did not want her son Earl to have the note and to one of them she said that she wanted plaintiff to have it "to pay on his place." While there is some testimony to the effect that she expected plaintiff to pay the money back at some indefinite time, the preponderance of the evidence shows that no conditions were attached to the gift.

There is also some testimony to the effect that, after the indorsement of the note to her son Earl, it was handed to him, and that he returned it to Mrs. Mallory, and that she kept it in her possession until it was delivered to plaintiff. The preponderance of the testimony, as we think, is with the plaintiff on the proposition that there was no delivery to the son. Deceased left a will in which she devised all her property to J. P. Christensen in trust for Earl B. Mallory, the principal to be given him when he arrived at the age of twenty-one years. The husband filed an election to take under the statute, and, of course, is not barred by the terms of the will. It is apparent that the transaction beween plaintiff and Mrs. Mallory did not amount to a will, and it is equally well settled that the gift to the plaintiff was not revoked by the prior will. The record clearly establishes a gift either *causa mortis* or *inter vivos*. As Mrs. Mallory was in her last illness at the time of making the gift and evidently made the donation under the apprehension of death from her existing disease we are constrained to hold that the transaction was *causa mortis*. This is the presumption from such a state of facts. *Knight v. Tripp,* 121 Cal. 674 (54 Pac. 267) ; *Henschel v. Maurer,* 69 Wis. 576 (34 N. W. 926, 2 Am. St. Rep. 757). And the testimony adduced is not sufficient to rebut this presumption.

II. There being no delivery of the note to Earl B. Mallory, the indorsement of the note to him did not amount to a completed gift. *Stokes v. Sprague, supra.* Aside from this, however, there is no showing that the claimed gift to Earl B. Mallory was not of the same character as that subsequently made to plaintiff, to wit, a gift *causa mortis.*

5. SAME.

If that were its character, it was revocable at the election of the donor, and in this case the donor did elect to recall it and to give it to another.

III. The real question in the case is the effect of the

gift upon the surviving husband's distributive share.   There
is no testimony whatever that an˙ actual fraud was in-
tended, and no room for any presumption of
6. SAME: gift by     fraud, except such as arises from the mere
wife: hus-
band's distrib-     fact that the gift was made.   It did not cover
· utive share.
all of the property of Mrs. Mallory.   She
had the property hitherto referred to which she disposed of
by will.   Creditors are not complaining, and the only rea-
son for saying that it is invalid is because of the fact that,
if the gift be sustained, it will deprive the surviving hus-
band of one-third of the amount of the note which he would
have been entitled to had the property remained in the
hands of the wife until her death.   Section 3362 of the
Code reads as follows:  "The personal property of the de-
ceased not necessary for the payment of debts, nor other-
wise disposed of, shall be distributed to the same persons
and in the same proportions as though it were real estate."
This section has been construed to mean that a wife can
not by will deprive her surviving husband of his distribu-
tive share in her personal estate.   *Ward v. Wolf*, 56 Iowa,
465; *Linton v. Crosby*, 61 Iowa, 401; *May v. Jones*, 87
Iowa, 194; *Poole v. Burnham*, 105 Iowa, 620.   However,
there is no statute which preserves to the survivor any in-
violate right in personal property, as in many of the states
whose courts have held that a gift *causa mortis* will not
be sustained as against the claims of a surviving husband
or wife.   There is a decided conflict in the authorities
upon the proposition now under consideration.   Some of
them squarely hold that a married woman can not by gift
*causa mortis* so dispose of her estate as to deprive her
husband of his statutory distributive share therein.   See
*Baker v. Smith*, 66 N. H. 422 (23 Atl. 82); *Jones v.
Brown*, 34 N. H. 439.   But others assert that such gifts
are valid, although they in effect deprive the survivor of
his distributive share for the reason that the survivor's
right is only to that property of which the owner died

seised or possessed. *Chase v. Redding,* 13 Gray (Mass.)
418; *Cranson v. Cranson,* 4 Mich. 230 (66 Am. Dec. 534).
We have adopted the latter rule for this jurisdiction. In
*Samson v. Samson,* 67 Iowa, 259, we said: "It is finally
contended that said gift is void as against public policy.
By the transaction the deceased was divested of much the
greater part of his estate; and the argument of counsel is
that, as the husband can not by will divest his widow of
the distributive share which the law gives her in his estate,
he should not be permitted to accomplish that result by
distributing it during his lifetime to his heirs. The ready
answer to this claim is that it is in the personal property
of which the husband dies seised that the law gives the
widow a distributive share. Code [1873] section 2436.
But during his lifetime she had no inchoate right in such
property, and he may make such disposition of it during
his lifetime as he sees fit. If he sells it, or makes any
other disposition of it by which he is divested of the owner-
ship, the wife has no claim upon it after his death. The
law has placed no restriction or limitation on the power
of the husband to make such disposition of his personal
property during his lifetime as he may elect." Doubtless
this language had reference to a gift *inter vivos;* but there
is no reason for not applying it to gifts *causa mortis,* save
that in one sense the latter kind of a donation is ambula-
tory in character. But in *Hatcher v. Buford,* 60 Ark.
169 (29 S. W. 641, 27 L. R. A. 507), it was said: "Many
authorities do speak of the *donatio causa mortis* as but
another form of testamentary disposition, and liken it unto
the testamentary disposition, for the reason that it is re-
vocable during the donor's life, is subject to his debts if
there be a deficiency of assets, and does not become an
absolute gift until the donor's death. *Jones v. Brown,* 34
N. H. 439; *Baker v. Smith,* 66 N. H. 422 (23 Atl.
82); 2 Kent, Com. 445; Schouler, Personal Prop. 138.
But while, in these particulars, it resembles a testa-

mentary disposition, it differs from it, in that the subject-
matter of the gift is delivered to the donee during the life
of the donor, and at his death does not pass into the hands
of the executor or administrator, but remains with the
donee.  This is not because the property or title has passed
to the donee during the life of the donor, or that the donor
is not actually seised in law at the time of his death, but
because it is one of the peculiar characteristics of this
species of gift that at the donor's death the donee takes,
instead of the heir, according to the intention of the donor,
as manifested during his life by delivery to the donee."
See, also, *Conner v. Root,* 11 Colo. 183 (17 Pac. 773) ;
*Marshall v. Berry,* 13 Allen (Mass.) 43.  In the *Marshall-
Berry* case the court said:  "It is contended that a gift
*mortis causa* is a testamentary disposition of the estate,
and therefore, if made by a married woman, would be con-
trary to the intent of Gen. Stats. chapter 108, section 9,
and, if sustained, would tend to defeat that provision.  Al-
though it is of a testamentary character in some of its
incidents, and is said to have been deemed by the Roman
law 'of the nature of legacies' (1 Story on Eq. section 607) ;
yet inasmuch as by our law an actual delivery, or
some equivalent act, by the donor, in his lifetime, is neces-
sary to its validity, we think it must be regarded as in its
essential character a gift.  The title passes by the delivery,
defeasible, only in the lifetime of the donor, by revocation,
either express, or implied by his recovery or some other
act inconsistent with the gift and indicating a purpose to
resume it.  The death of the donor perfects the title by
terminating his right or power of defeasance.  This mode
of transmission can apply only to certain specific articles
capable of passing by delivery, and not as a disposition of
the donor's estate.  If it purport to be such a disposition
—that is, if it assume the province of a will—it is void.
*Headley v. Kirby,* 18 Pa. 326.  It is not subject to probate,
nor to contribution with legacies in case of insufficiency of

assets, nor to any of the incidents of administration. The donor at his decease is held to be already divested of his property in the subject of the gift, so that no right or title in it passes to his personal representatives. The donee takes the gift, as it is said, not from the administrator, but against him. It is subject to debts; but only in the same way as other voluntary conveyances and gifts would be. That the wife may thereby evade the provision of the statute, which disables her from depriving her husband of more than half of her personal estate by her will, without his consent in writing, may be equally urged against any disposition of it in her lifetime. This consideration does not protect the wife from such disposition of his estate by the husband. *Chase v. Redding,* 13 Gray (Mass.) 418. We see no reason for guarding the rights of the husband more tenderly than those of the wife. In the case of *Jones v. Brown,* 34 N. H. 439, the court seem to hold a contrary doctrine, both as to the nature of the gift and the power of the wife to make it. But, if the current of authorities be interpreted by the thing decided rather than by the phraseology used, it must result in the position before stated, that *donatio causa mortis* is not a testament, but a gift. *Nicholas v. Adams,* 2 Whart. (Pa.) 17-22, and *Dole v. Lincoln,* 31 Me. 422, contain strong statements of this view of the subject." The question of the power of the wife must be determined upon statutes, and therefore the decision in New Hampshire can have little weight with us, except for its bearing upon the other point. Our statutes are broad and explicit. If the Legislature intended that the wife should be restricted in this respect, it would have been so declared. In the absence of any provision of statute inconsistent with the right of the wife to dispose of her personal property in this manner, we must hold that she has the power. Our statutes give a married woman full power to dispose of her separate estate, and contain no restrictions upon her power to alien-

ate her personal property. She may therefore dispose of the same either by gift, sale, or will as completely as her husband may of his property. And the Code expressly says that the survivor is entitled to the personal property of the deceased not necessary to the payment of debts nor (or) otherwise disposed of. This clearly has reference only to the property of which the deceased was the owner at the time of his or her death.

We reach the satisfactory conclusion that, as no fraud was intended, the gift should be sustained, although it deprived the husband of his distributive share in that amount of personal property.

It follows that the decree awarding the note and mortgage to plaintiff must be, and it is, *affirmed*.