MARY C. HAULMAN, Appellant, v. H. E. HAULMAN and B. T. HAULMAN, Executors, Appellees.

Trusts: POWER TO CREATE: CHARACTER OF INSTRUMENT. The legal
1   title to any property may be conveyed to a trustee to be held for the benefit of others: but where enjoyment is deferred until after the death of the grantor the legal title remains in him until his death and the instrument is to be treated as testamentary in character. Where, however, the conveyance transfers the title, dominion and control of the property to the trustee at the time of its execution, a postponement of the enjoyment to some future time will not make the instrument testamentary in character.

Same: POWER OF DISPOSITION: RIGHTS OF BENEFICIARY: REVOCATION
2   OF TRUST. Any competent person has a legal right to transfer any kind of property to a trustee for the use of a designated beneficiary, with or without consideration, and the beneficiary acquires an immediate and vested interest subject only to the rights of creditors; and such a disposition when consummated is binding upon the donor and all persons claiming under him, and cannot be revoked unless the power of revocation has been expressly reserved.

Same: WILLS: GIFTS: DISTINCTION. The donor placed certain money
3   in trust for his children with provision that other sums might be added to the fund, and provided that he should receive interest on the fund, if he so desired, with final distribution five years after his death. The donor gave directions as to the management of the fund but reserved no control over the same. It was also provided that each child might receive a loan from the fund or in case of necessity might have his share of the fund. The issue of deceased

children were to have the share of their parents, and the survivors
the share of any child dying without issue. *Held*, that the instru-
ment conveyed a present interest and was not testamentary in
character, so that the wife of the donor who was married to him
after the execution of the trust was not entitled to anything out of ·
the fund. It is also held that the instrument did not create a gift
*inter vivos*.

*Appeal from Polk District Court.*—HON. LAWRENCE DE
GRAFF, Judge.

TUESDAY, MARCH 17, 1914.

ACTION to construe a trust instrument. Plaintiff con-
tends that the instrument was testamentary in its character,
and, not being executed or witnessed, as required by law, it
could not be enforced, even as such; that the defendants named
as trustees in the instrument, took no title to the property in
controversy, and had no right to the property in controversy,
under the instrument in question; that, the instrument being
ineffectual as a trust deed, the property passed to the estate
of the trustor, and was therefore wrongfully retained by
defendants. Decree for defendants dismissing plaintiff's pe-
tition.—*Affirmed.*

*Ryan & Ryan*, for appellant.

*E. P. Hudson*, for appellees.

GAYNOR, J.—The plaintiff is the widow of one Harry
Haulman. The defendants are the executors of his will. This
action is brought by the plaintiff to have the defendants re-
moved as executors of the will, on the ground that they have
in their possession a certain sum of money received by them
from Harry Haulman before his death, under some sort of an
arrangement between them, by which they were to pay to the
deceased interest upon the money held by them, and that they
have failed to account for the same as any portion of the

estate; that they filed an inventory of the personal property of the said Harry Haulman, and therein made no mention of the money so received and held by them.

The defendants filed an answer to plaintiff's petition, alleging that the money so held by them was no part of the estate of Harry Haulman, alleging that on or about the 5th of December, 1907, said Harry Haulman executed and delivered to them an instrument, in writing, in the following words and figures, and that the money referred to in said instrument is the same money of which the plaintiff complains:

These presents witness that I, Harry Haulman, a resident of Ankeny, in the county of Polk and state of Iowa, do by these presents create a trust of my entire property, and do place the same therein subject to the following conditions and limitations, to wit:

On the 1st day of November, A. D. 1907, I will place in the hands of my two sons, H. E. Haulman and B. T. Haulman, the sum of twenty-five hundred dollars ($2,500.00), whom I do hereby create the trustees of said fund, and also of any and all other sums that may be added to said sum both before and after my decease.

Said sum of twenty-five hundred dollars ($2,500.00) is hereby placed in trust with my said sons, H. E. Haulman and B. T. Haulman, for the use and benefit of my five children, to wit, H. E. Haulman, B. T. Haulman, Mrs. J. H. Harris, Mrs. W. H. Lewis, and Mrs. A. W. Wagner, each to share equally in the fund and benefits thereof as hereinafter provided.

Said sum of $2,500.00 is to be invested in such securities as my said trustees shall both agree upon and deem wise and best by them, and they are to add to said fund all interest accumulations and profits accruing from said $2,500.00 so invested, and to keep said fund, its accumulations and profits, continuously invested in such ways as they shall deem best.

My said trustees shall pay to me 4 per cent. interest on said original sum of $2,500.00 on the 1st day of November in each year beginning with November 1, A. D. 1908. But, in case I do not need or desire my said trustees to pay me said interest, then the same shall be kept intact in said trust fund.

My said trustees shall not be required to pay interest on any accumulations or profits, but only on the original sum of $2,500.00.

With the written consent of all of my said children who may be living at any particular time, my said trustees may loan any portion of said trust fund to any one of my said children on such terms and securities as to my said trustees shall seem wise and best.

In case, also, of real necessity, and upon the written consent of all of my said children who may be living at any particular time, my said trustees may permit any one of my said children to draw from said trust fund any amount which my said trustees shall think to be best, up to the amount of such child's undivided share in said fund, but no more. In case of the death of one or more of my said children, his children or living issue of his body shall have and receive his parent's share of said fund, and the benefits thereof, the same as my said child so deceased would have received his share of said fund, and the benefits and profits thereof.

In case any of my said children shall die leaving no children or living issue of his body, then, and in that event, the portion of said trust fund and its accumulations which would have gone to my said child shall remain in said trust fund, and shall be divided equally among my said other children, or their issue, the same as the balance of the fund shall be handled, and not otherwise.

Upon my death, all of my property, both real and personal, and wherever situated, shall pass into the hands of my said trustees to be handled by them as said $2,500.00, and the whole of said property shall be kept intact by my said trustees in such form and condition as to them shall seem best for the full period of five years from the date of my decease, when, at that time, my said trustees shall make an equal distribution of said trust property, and of all of my property then remaining, to my said five children, or the living issue of their body, share and share alike. That is, each child shall receive a portion equal in all respects to that of any other of my said children. And if any of my said children be then dead, and have issue of their body then living, such issue shall receive the portion of said trust fund and property which would have gone to their parent had he or she been living.

In the case of the death of either or both of my said

trustees, the remaining children of mine herein mentioned shall choose a successor to such deceased trustee who shall carry on and perform the trust herein created. It being my desire and intent that no person outside of my own children as herein mentioned shall ever be a trustee of this trust. It being my desire, also, and intention that there shall at all times be two trustees of my said property.

Should I, at any time, add to this trust amount in my lifetime, my said trustees shall receive such amounts, and handle and care for such amounts, the same as is herein mentioned concerning said $2,500.00 and its accumulations and other property.

It is my desire, and a condition that I require of my said trustees, that they keep a strict account of said trust fund, and of all additions thereto, and of all accumulations thereof, and that each year, in the month of November, they render a written statement to me, and to each of my said children, showing the actual condition of said fund, the amount thereof, and how invested, and the securities held by them. It is also my desire and intention that my said trustees shall serve without compensation other than that arising to all of my children equally.

Witness my hand this 5th day of December, A. D. 1907.

It appears that, at the same time that this instrument above set out was executed, the said Harry Haulman made his will:

I, Harry Haulman, being of lawful age and of sound mind and disposing memory do hereby make, publish and declare this to be my last will and testament, to wit: I do hereby will, bequeath and devise unto my five children, H. E. Haulman, B. T. Haulman, Mrs. J. H. Harris, Mrs. W. H. Lewis and Mrs. A. W. Wagner, all of my property both real and personal that I now have, or may hereafter accumulate or acquire, share and share alike. I do hereby nominate and appoint my two sons, H. E. Haulman and B. T. Haulman executors of this my last will and testament and request and direct that they keep and care for my property the same as I have this day directed them to do in an article of trust and that they follow out the provisions of said trust fully, and, at the end of five years from my decease that they make an equal distribution of my property to my said children. If any of my said children die without issue and in that event, his

share shall be equally divided among the remaining children, except that if any of my children are deceased and have living issue, then and in that event, they shall receive the share which their parent would have received if living.

I do hereby request that said trust be fully executed and that said trust instrument and this will be construed together and that my said property be handled and disposed of as in said trust instrument and in this will provided. Witness my hand this 5th day of December, A. D. 1907.

It appears that on the day said instruments were executed the said Harry Haulman gave and delivered into the hands of the trustees named in said deed (defendants herein), to be controlled as provided in said instrument, the sum therein named, being the amount involved in this controversy; that they handled the same under said trust deed, together with the accumulations, in accordance with the. trust therein created, and had the same, with its accumulations, on hand at the time this proceeding was commenced.

It appears that the plaintiff herein and the said Harry Haulman were married on the 29th day of January, 1908, and that the said Harry Haulman died on the 11th day of November, 1912; that the will, hereinbefore set out, was duly probated; that the plaintiff elected to take her distributive share in the estate of the said Harry Haulman.

It appears that, after the defendants had filed their answer setting out the foregoing facts, the plaintiff filed the following motion, which was by the court overruled: "And now comes Mary C. Haulman, widow of Harry Haulman, deceased, and upon the 'answer of executors to petition of Mary C. Haulman for their removal,' and the admissions in said answer contained, moves this honorable court to order, adjudge, and decree that said Mary C. Haulman is entitled to a one-third interest in all the property of said Harry Haulman, including the $2,500 in said answer mentioned, and that the said executors be required to amend their inventory filed herein so as to include said $2,500 therein."

The removal of the executors, as prayed for, was denied; the court especially finding that the $2,500, with its accumulations, mentioned in the trust deed, was no part of the estate of Harry Haulman, and that the plaintiff is not entitled to participate therein. From this order, the appeal was taken.

The appellant relies upon five points for reversal:

(1) There was no executed gift by virtue of the trust instrument, for an executed gift is inconsistent with the declaration of trust.

(2) A trust instrument vests in the trustees only such estate as is necessary to enable them to execute the trust.

(3) Equity will not interpose to perfect a defective gift or voluntary settlement.

(4) The instrument was not executed in compliance with the statute governing wills, and therefore is ineffective as a testamentary disposition of property. It is equally ineffective to evidence a gift *inter vivos*.

(5) The fact that in the will testator requires the trustees to ''keep and care for my property the same as I have this day directed them to do in an article of trust and that they follow out the provisions of said trust fully, and, at the end of five years from my decease that they make an equal distribution of my property to my children,'' does not make the trust instrument a part of said will, and so give to said instrument vitality as a testamentary disposition of property.

A proper determination of the controversy here involves a construction of the instruments hereinbefore set out. The rights of these parties to the money in controversy must be determined from a consideration of these instruments alone.

There is no question but that any property, real or personal, may be transferred and conveyed by the owner to a trustee, to be held by the trustee for the use and benefit of 1. TRUSTS: power others; that the owner of property may transto create: character of instrument. fer the legal title to another, to be held, controlled, and managed by the other for the use and benefit of others designated by him.

It is true that, where the use· and benefit and enjoyment of the thing conveyed is deferred until after the death of the owner, and where, by the terms of the instrument, the conveyance does not become effectual until after the death of the grantor, and the legal title remains in the grantor until such time, the instrument is, of necessity, testamentary in its character, and can be enforced only as such.

To make it effectual, the instrument of conveyance must operate *in praesenti*. It must transfer the title, dominion, and control over the thing to the trustee at the time of its execution and delivery, and when this is done, the enjoyment of the thing conveyed may be postponed until after the death of the grantor, or postponed to any future time. The benefits to be derived from the grant may be postponed, without the instrument losing any of its *efficiency* as a trust instrument, or without affecting, in the least, the trust character of the conveyance.

In all instruments of this kind, where a trust is created in one for the use and benefit of another the party creating the trust must release all power of disposition over the fund.

It is fundamental law that any person of lawful age and sound mind has a legal right to turn over personal property of whatever character into the hands of another, to be held and used for the benefit of some person designated therein as beneficiary, and that, when this is done, whether by written instrument or parol, the beneficiary obtains an immediate and vested interest in the subject of the trust, and the party creating the trust cannot revoke or disaffirm the same, unless such power of revocation has been reserved, in express terms, at the time of the creation of the trust. The owner of personal property has the absolute right to dispose of it to whomsoever he sees fit, with or without consideration, and subject only to those limitations as to creditors,·and such a disposition, when fully consummated, becomes binding upon

2. SAME: power of disposition: rights of beneficiary: revocation of trust.

him, and upon all claiming by, through, or under him.   See *Jones v. Nicholas,* 151 Iowa, 362; *Love v. Blauw,* 61 Kan. 496 (59 Pac. 1059, 48 L. R. A. 257, 78 Am. St. Rep. 334) ; *Forney v. Remey,* 77 Iowa, 549; *Lewis v. Curnutt,* 130 Iowa. 423.

As said in *Cameron v. Cameron,* reported in 10 Smedes & M. (Miss.) 394 (48 Am. Dec. 759) : ''In a case of this kind the only inquiry need be whether the deed of the husband is absolute and irrevocable or not.   It is the undoubted right and privilege of a husband to dispose of his personal estate in any manner he thinks proper in his own lifetime, and to thus cut off his widow from dower in such property; and a voluntary conveyance will be good against the claims of the widow.''

In determining whether an instrument, such as we have here, is a deed or a will, the main question is: Did the maker intend to convey an estate· or interest that should vest before his death, and immediately upon the execution of the instrument, or did he intend that all the interest and estate affected by the instrument should pass only after his death?   If the instrument passed a present estate, and passed the title and right to possession to the property involved, immediately upon its execution to the trustee named therein, it is effectual, although the enjoyment of the thing conveyed in the parties named as beneficiaries is postponed to a future date.   All that is necessary is that the donor or grantor should have absolutely parted with his interest, and have effectually put such interest beyond his reach.   *Vosburg v. Mallory,* 155 Iowa, 165; *Lane v. Ewing,* 31 Mo. 75 (77 Am. Dec. 632).   See, also, *Wilson v. Carrico,* 140 Ind. 533 (40 N. E. 50, 49 Am. St. Rep. 213).

. *In Re Estate of Podhajsky,* 137 Iowa, 742, it is said: ''It is immaterial whether we call the transaction now under consideration (and we might remark this is a case very much like the one at bar) a gift by the deceased to his daughters, or a trust established by him for their benefit.   Indeed, a voluntary trust is simply a device by which a donor effectuates a gift,

either of property or of its beneficial use and enjoyment, to a designated donee. Even a gift *causa mortis* may be effected by delivery to a third person in trust for the donee, although the gift does not come to the knowledge of the donee, and is not accepted by him until after the death of the donor. The acts of the trustee or third person receiving the property for the benefit of the donee are deemed to be in the interest of the latter, and the acceptance of the gift is presumed''—citing *Clough v. Clough,* 117 Mass. 83; *Gerrish v. Institution,* 128 Mass. 159 (35 Am. Rep. 365) and other cases. See, also, *Dettmerr v. Behrens,* 106 Iowa, 585.

It has even been held that a reserved power in the grantor to recall the grant, which has not been exercised during the life of the grantor, does not destroy the effectiveness of the grant. *Lippold v. Lippold,* 112 Iowa, 134; *Newton v. Bealer,* 41 Iowa, 334.

In *Lewis v. Curnutt, supra,* this court said: ''The same purpose to direct and control the disposition of property beyond the life of the owner is very frequently accomplished through a trustee, who may be appointed by will, or by deed, or by other suitable declaration of trust. Subject only to the condition that the purpose of the trust be not in contravention of the command or policy of the law, the right and power of the owner of property to thus dispose of it is elementary''— citing *Hollis v. Drew Seminary,* 95 N. Y. 166, in which it is said: ''The general rule is that one may do with his property as he pleases. He may dispose of it by will in any way that suits his fancy or his judgment. He may give it all to strangers, and thus disinherit his relatives. He may give it all to natural persons or to corporations capable of taking. He may give it directly, or create trusts which the law allows; and this general power of disposition he possesses down to the last hour of conscious, intelligent existence.'' It is further said in this case: ''Whether the trust be created by will or by deed, if it be lawful, and the intent can be fairly ascertained from the examination of the instrument, the courts will

uphold and enforce it.   . . .   'The intent of the settlor in the creation of trusts is what the courts look to,  . . .   and that intent is to be carried into effect, unless it contravenes some public policy of the law.' "  It is further said in *Lewis v. Curnutt, supra*: "Moreover, it must be remembered that it is not necessary in any case to the establishment of a trust that any beneficial interest shall pass to the trustee.  From its very nature, a trust involves the idea of a separation of the beneficial interest from the legal title.  When a trust is executed by the delivery of a simple conveyance to the trustee, that act and instrument serve to pass an immediate present interest to the *cestui que* trust, no matter how far in the future the enjoyment of the benefit thus provided may be deferred."

In *Forney v. Remey*, 77 Iowa, 549, it was expressly decided by this court that one owning property, real or personal, may transfer and convey the same to a trustee, to be held for his own benefit, or for other beneficiaries.  The instrument in this *Forney* case, upon its face, was a conveyance in trust for the benefit of the grantor and others who were named as beneficiaries upon the face of the instrument.  The instrument assigned, transferred and conveyed certain accounts and personal property to a certain person named as trustee, a schedule of which was attached.  Following the naming of the trustee, and the transfer of the property in the instrument set out, the trustor made provision that the trustee named in the instrument should hold the property, and, after deducting from the interest, rents, income, and profits any expense attending the execution of the trust, the trustee should pay to the trustor all the interest, rent, and income, and profits arising from such property, such payments to be made during her natural life, and at the death of the donor or trustor the property to be distributed among those named therein as beneficiaries.  The court said: "The plaintiff's counsel insist that the instrument witnesses a gift *inter vivos*, . . .  is not valid, for the reason that it is testamentary in its character.  It is plain that the conveyance is not a gift

*inter vivos.* The grantor herself is named as the first bene-
ficiary, retaining the power to direct the investment of the
funds arising from the property. The other beneficiaries can,
under the instrument, receive no benefits from the property
until after the death of the grantor. Nothing further need
be said in order to refute utterly plaintiff's position that the
instrument witnesses a gift *inter vivos.*" The court further
said: "The property, under the instrument, passes to the de-
fendant, who takes it as a trustee, and holds it subject to the
terms of the trust. The title passes . . . *in praesenti.*
It does not await the death of the grantor. She lost owner-
ship and control of the property by the execution of the deed.
. . . There is nothing in the conveyance . . . suggest-
ing an idea of a future power of disposition retained by the
grantor. She could not revoke the grant, nor in any way
change its terms and conditions."

Many more cases might be cited in support of the defend-
ants' claim; but we do not deem it necessary to make refer-
ence to them, for the reason that every question raised in this
case has been fully and fairly met and decided by our own
court, and each case is amply supported by well-considered
cases from other states.

The question in this case then is: Do the instruments
herein relied upon meet the requirements of the law as here-
inbefore stated?

The instrument under consideration provides: "I will
place in the hands of my two sons, H. E. Haulman and B. T.
Haulman, the sum of $2,500.00."

It appears that on the date of the execution of this instru-
ment he did place $2,500 in the hands of these two sons. It
appears that he placed this money in their hands as trustees,
not only of that sum, but any and all other
sums that might be added to it; that he placed
it in trust with them for the use and benefit
of his children named in the instrument.

3. SAME: wills:
gifts:
distinction.

It appears that Harry Haulman, the creator of the trust,

had, at the time the instrument was executed, $2,500 in money; that he paid this money to the defendants, to be held by them in trust for his children; that by the instrument, he created them trustees of the fund, and retained no control over the fund, no right to withdraw it from their hands, or direct its disposition other than is shown in the instrument creating the trust. It appears that this money, so delivered to these trustees, was never withdrawn by Harry Haulman, and was in the hands of the defendants, as trustees, under the trust instrument at the time this action was commenced. It is true that in the instrument he directed his trustees as to the management of the fund, but assumed no control over the management of it himself, and directed his trustees, upon his death, to distribute the fund to the beneficiaries named in the trust deed, as therein provided.

It is true that the trust deed and the will undertake to dispose of and control property not shown to have been in existence at the time of the making of the trust deed and will, and property which does not appear to have ever been delivered by him to the trustees. This does not affect the trust character of the property in controversy, which was, in fact, delivered to, and retained by, the trustees under the trust deed, and which is the property in controversy here. The will in no way changes or attempts to change the disposition of this fund in the hands of the trustees. Nor is it in any way inconsistent with the provisions of the trust deed.

Thus a proper construction of this instrument shows that the property in controversy under the instrument in question passed to these defendants as trustees; that they took it, and were holding it at the time this action was commenced, subject to the terms of the trust; that the title to this money passed to these trustees immediately upon the execution and delivery of the trust deed and the property; that the maker of the trust deed retained no personal control over the property after the execution of the instrument, and the delivery of the same to the trustees; that, by the execution and de-

livery of the deed and the property to these trustees, he then lost ownership and control of the property. The instrument itself suggests that he retained no power over the property that would enable him, in the future, to make any other different disposition than was provided for in the instrument. He could not revoke it, or in any way change its terms and conditions. The legal title passed to the trustees. The beneficial interest passed to his children. Both the legal title and the beneficial interest passed, upon the delivery of the instrument and the property, to the trustees, and the instrument itself shows that that was his purpose and intent. He had a legal right to make the instrument at the time. He had a legal right to transfer the property direct, if he so chose, to the beneficiaries named therein. If he had done so, no question could possibly have arisen such as we have before us now. He chose, however, to pass the legal title to these defendants, and the beneficial interest to the beneficiaries named in his deed. Having parted with both, nothing remained in him, at the time of his death, that could possibly pass to his executors under the will.

The cases cited by counsel for appellant fail to support their position that the instrument in question is not a trust deed, operating in *praesenti*. The instrument itself, upon its face, under the holdings of this court heretofore referred to, shows that the instrument is not a testamentary writing, and does not witness a gift *inter vivos*. Without reviewing the cases cited by appellant, we are satisfied with the holdings of this court, heretofore made, which, an examination shows, are amply supported by the best authority.

We find no error in the record, and the cause is—*Affirmed*.

LADD, C. J., and DEEMER and WITHROW, JJ., concurring.