TURBIDE *v.* FOREST.

1. BANKS AND BANKING—JOINT SAVINGS CERTIFICATES—UNDUE IN-
FLUENCE—FRAUD.

Record in widow's suit to set aside joint savings bank cer-
tificates and agreement between childless testator and his
niece relative to distribution of such accounts, set up some
2 months prior to testator's death, *held*, to justify trial court's
finding that no misrepresentations were made to decedent,
or that undue or improper influence was exerted or actual
fraud was practiced upon him in the creation of such estates
(CL 1948, § 487.703).

2. SAME—JOINT SAVINGS CERTIFICATES—CONSTRUCTIVE FRAUD—EVI-
DENCE.

Rights of niece in joint savings bank certificates, purchased
by childless testator some 2 months before he died, which
named his niece as co-owner with right of survivorship, and
which were valid as between the parties and the bank, did
not become nonexistent upon his subsequent execution of his
will and an agreement with such niece relative to distribu-
tion of the moneys in such certificates, and, under circum-
stances presented, did not constitute a constructive fraud
upon the widow who was amply provided for with approxi-
mately 75% of testator's $40,000 estate (CL 1948, § 487.703).

Appeal from Wayne; McCree, Jr. (Wade H.), J.
Submitted October 14, 1959. (Docket No. 78, Cal-
endar No. 48,141.) Decided January 4, 1960. Re-
hearing denied February 25, 1960.

Bill by Delvina Turbide against Albina Forest,
individually and as executrix of the estate of Norman
Turbide, deceased, to set aside trust agreement and
determine bank savings certificates as assets of

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur, Banks § 425 *et seq.*

estate. Decree for plaintiff. Defendant appeals. Reversed and remanded.

*A. C. Lappin* and *M. H. Shillman,* for plaintiff.

*Shirley T. Johnson,* for defendant.

Kelly, J. The question presented in this appeal is—Did the trial court err in finding that joint bank accounts with right of survivorship were nullified by a subsequent will and agreement?

June 5, 1957, Norman Turbide (also referred to and known as Armand Norman Turbide) purchased bank savings certificates totalling $10,000 in the joint names of himself and his niece, Albina Forest (defendant and appellant), and executed signature cards which recited the purchase in the name of joint owners with right of survivorship, pursuant to the statute (CL 1948, § 487.703 [Stat Ann 1957 Rev § 23.303]).

Six days after creating the joint bank accounts, on June 11, 1957, Armand Norman Turbide simultaneously executed a will and signed an instrument entitled "Agreement."

The preamble of the will recited that testator "being of sound and disposing mind and memory, and considering it advisable because of advancing age, physical infirmities, and other things that I arrange for the disposition of my estate in the event of my death."

Norman Turbide died on August 4, 1957, almost 2 months after executing his will.

The third paragraph of the will reads:

"I have placed title to my residence property at 19348 Bauman street (which is an income-producing two-family dwelling) in joint names of my wife and self, and complete title to the same will vest in my wife, if she survive me. I have also made her joint

holder of several bank accounts, and other property, and she is the recipient of social security pension payments, which will be increased for her upon my death. I thus feel that she is well provided for, and should not be in any need of further participation in my estate beyond what she will be entitled to by law as my widow. I have affectionate regard for her as a good and faithful wife, but as we have no children, it is my intent and will that such portion of my estate as herein set forth be given to those mentioned of my own kinship and blood."

The fourth paragraph of the will gives, devises and bequeaths the statutory share of testator's property to the wife.

The fifth paragraph, the residuary clause, makes equal provision for 5 named nieces, including defendant, and a grandnephew.

The agreement entered into and signed by Armand Norman Turbide and his niece, Albina Forest, provided:

"(1) That on or about June 5, 1957, first party, has placed in joint ownership with second party certain savings certificates and bank accounts at Bank of the Commonwealth, and the Detroit Bank and Trust Company in the gross amount of $10,000 savings certificates and a small amount of savings bank accounts in said banks, which joint parties understand will vest in and become the sole property of the survivor upon the death of either of said parties.

"(2) That the said savings certificates and bank account balances are to be available to the first party for his needs and use, if he so desire at any time prior to his death, with the understanding that all of the savings certificates and bank account balances, and any and all interest thereon shall vest in the second party upon the death of first party.

"(3) That the said property, consisting of savings certificates, bank accounts, et cetera thus placed

are to be held and accepted by the second party, if and when title thereto completely vests in her upon the understanding with first party that she divide the net value thereof equally between herself, and Alexandrine Landry, Louise Richard, Hattie Keenan, Florence DeVos and Eddie Arsenault, nieces and grandnephew of first party, respectively, after the death of first party, and at the reasonable convenience of second party to so divide and distribute the avails thereof, subject to such reasonable expenses for services and handling the same by the second party, and any expense she may have for assistance of counsel in arranging and carrying out the distribution thereof.

"(4) That second party should retain Attorney MacRae for such assistance as she may need, if said attorney be available, and that the decision of second party and said counsel be final as to all matters connected with the distribution of the said property, when distribution thereof shall take place."

The record sustains the trial court's finding "that no misrepresentations were made to decedent, nor was any undue or improper influence of any nature exerted upon him to cause him to create these estates, and further finds that there is no actual fraud practiced."

The court ordered defendant to convey the bank savings certificates to the estate of Armand Turbide, stating:

"The Court finds that the creation of the joint accounts payable to survivor, although valid between the parties and the financial institution, did not vest a present title in defendant, and for that reason remained in the estate upon the death of Armand Turbide. Although the agreement, being exhibit 2, appears on its face to have been executed with the formalities required for wills in this State, it has not been urged that this instrument constitutes such."

The court's conclusion was based solely upon a reading and interpretation of the will and the agreement and instruments creating the joint accounts. There was no testimony that Armand Turbide desired any disposition of his property other than as provided.

We agree with the court's finding that Armand Turbide created valid joint accounts, payable to survivor "valid between the parties and the financial institution," but disagree with the court's finding that these valid joint accounts became nonexistent upon Armand Turbide's death due to an agreement with defendant that she would divide the accounts with the nieces and grandnephew.

In *Anderson* v. *Lewis,* 342 Mich 53, deceased and his defendant sister had a joint account in 1943. Deceased contributed funds to the account. He died in 1954. Defendant, subsequent to her brother's death, at first made no claim but did state she felt she had an interest but would take nothing until he died. The Court held that the fact she thought her rights differed in the joint account prior to and after the brother's death did not change its legal status and that it was a joint account.

A similar question to the one here presented was determined by the New York court in *In re Jagodzinska's Estate,* 272 App Div 660 (74 NYS2d 628), where the administrator claimed that an agreement to divide the proceeds of a joint account destroyed the rights of the survivor. The court held that the issue for determination was whether the estate was entitled to the funds, and in finding that it was not so entitled, stated (p 663):

"We find in the record no competent evidence sufficient to rebut the presumption that Franciszka Jagodzinska, at the time she established the account in question, intended to create a joint account

including rights of survivorship with her daughter Lottie Drzyzga, this appellant.  *  *  *

"If there was any agreement between the appellant and her deceased mother which imposed a trust for the benefit of her brothers and sisters upon the moneys which appellant took as survivor that would not destroy her rights as survivor or let the estate in for the fund."

We find a similar ruling in *Jarkieh* v. *Badagliacco,* 75 Cal App 2d 505 (170 P2d 994), where the court held that the creation of the account and an agreement at the time the joint account was opened whereby the daughter promised the mother that upon her mother's death she would divide the moneys equally with her brother, would not affect the creation of the joint account as the agreement was a separate issue from the creation of said account.

The lump sum value of Armand Norman Turbide's possessions at the time of his death, including real and personal property jointly held with plaintiff and the $10,000 here in dispute, was approximately $40,-000. This does not include the monthly rentals received by plaintiff for the upstairs flat nor her social security payments, which total $125.90 per month. The plaintiff, through joint holdings, will receive approximately $30,000, or 75% of said possessions.

Plaintiff candidly admits no actual fraud on the part of deceased, but urges that the creation of the joint bank accounts and savings certificates with defendant was constructive fraud.

The deceased expressed in his will that plaintiff was amply provided for. He exercised his rights to dispose of his personalty during his lifetime through these joint bank accounts and savings certificates. Such scheme was not a sham or illusory. As previously noted, his mental incompetency and the issue of fraud were not seriously urged, nor was fraud, in fact, found to exist. We conclude, therefore, that

the acts of the deceased were not a fraud upon the rights of the widow and that the proceeds of the joint bank accounts and savings certificates belong to defendant to be distributed in accordance with the agreement.

Reversed and remanded to the trial court for entry of a decree providing that defendant is entitled to the savings certificates and savings accounts as survivor. Costs to appellant.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.