Ricca GUNSAULIS, Individually, as surviv-
ing spouse of Fred H. Gunsaulis, and as
Administrator of the Estate of Fred H.
Gunsaulis, Deceased, Appellant,

v.

Harriett TINGLER, Appellee.

No. 56268.

Supreme Court of Iowa.

May 22, 1974.

Fuerste & Carew, Dubuque, for appellant.

Kintzinger, Kintzinger, Van Etten & Setter, Dubuque, for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, UHLENHOPP and McCORMICK, JJ.

UHLENHOPP, Justice.

The question in this appeal is whether the plaintiff-widow is entitled to certificates of deposit and a balance in a pension fund formerly owned by her deceased husband.

Fred H. Gunsaulis, born in 1902, taught school during his adult life, mainly in Dubuque, Iowa. His first marriage ended in divorce. He never had children. His closest blood relative was his niece, Harriett Tingler.

Mr. Gunsaulis married a second time in 1943, to Ricca Powers. She was born in 1893. Her first husband, by whom she had four children, died in 1936. At the time she married Mr. Gunsaulis, her children were grown. She too taught school, mainly in Wisconsin near East Dubuque.

Fred and Ricca Gunsaulis lived in a rented house in Dubuque for a number of years. They kept their financial matters separate and did not communicate with each other about those matters. Each had a bank account, a car, and savings. Mr. Gunsaulis paid for the food and rent, and Mrs. Gunsaulis helped pay for furniture and various other items.

Mrs. Gunsaulis retired in 1969 and received social security and payments from the Wisconsin Teachers Retirement Fund. The evidence shows that since 1966, Mrs. Gunsaulis had a savings account in a bank in the names of "Ricca Gunsaulis or Evelyn Yoder" (one of her daughters). In 1970 she opened another savings account in a bank in the names of "Ricca Gunsaulis or Jean Collis" (another daughter). At time of trial both accounts still existed;

the evidence does not show the balance at that time in the first account, but the balance in the second one was $5,062.93. The evidence does not show, either, what other assets Mrs. Gunsaulis has except for her car, such rights as she has under the Wisconsin retirement fund, and life insurance in an undisclosed amount.

Mr. Gunsaulis retired in 1970. His assets prior to his death consisted of a 1965 Chevrolet car worth about $600, personal effects of about $250, furniture worth about $500, a checking account containing about $1,600, seven joint-tenancy certificates of deposit of the total principal amount of $7,000, and rights under the Iowa Public Employees Retirement System (IPERS).

Mr. Gunsaulis formerly had six of the certificates of deposit in his name alone and the seventh in the names of himself and his niece, Mrs. Tingler. In 1970 he placed all seven of them in the names of "Fred Gunsaulis and Mrs. Harriett Tingler as joint tenants with right of survivorship and not as tenants in common." He retained the certificates in his possession. Also, he formerly had Mrs. Gunsaulis as his beneficiary, following himself, under IPERS. When he retired in 1970, he elected to receive a reduced pension for life with the provision that if he died before withdrawing the contributions to the IPERS fund of himself and his employer, the balance would be paid in a lump sum to Harriett Tingler.

Mr. Gunsaulis died on July 25, 1971. Mrs. Tingler received $7,000 from the bank under the certificates of deposit and $6,660.21 as the balance from IPERS. From these funds, she paid $1,000 on Mr. Gunsaulis's funeral expense of $1,300 and $1,266 in Iowa inheritance tax. Mrs. Gunsaulis received Mr. Gunsaulis's other assets.

Mrs. Gunsaulis brought this action against Mrs. Tingler claiming $7,000 from the certificates of deposit and $6,660.21 from the IPERS fund. The trial court

held for Mrs. Tingler, and Mrs. Gunsaulis appealed.

The evidence contains no proof of fraud, mistake, duress, or mental incapacity. The case presents two problems. First, apart from the rights of Mrs. Gunsaulis as surviving spouse, were the modes of transfer of the certificates and the IPERS balance legally efficacious? Second, if so, do the rights of Mrs. Gunsaulis as surviving spouse intervene to prevent transfer of the certificates and the IPERS balance to Harriett Tingler?

I. *Effectiveness of Transfers.* We first approach the problem of the effectiveness of the transfers as though Mrs. Gunsaulis were not in the picture. Were the placement of the certificates in joint tenancy and the designation of the IPERS beneficiary effective?

█ (a) The language of the certificates was about as clear in creating a joint tenancy as language can be: "Fred Gunsaulis and Mrs. Harriett Tingler as joint tenants with right of survivorship and not as tenants in common." Under the decisions of this court, that language did as it purported to do; it constituted the two individuals joint tenants with the survivor taking the balance owing by the bank on the certificates. McCuen v. Hartsock, 159 N.W.2d 455 (Iowa); In re Estate of Martin, 261 Iowa 630, 155 N.W.2d 401; In re Estate of Stamets, 260 Iowa 93, 148 N.W.2d 468; Burns v. Nemo, 252 Iowa 306, 105 N.W.2d 217; In re Estate of Miller, 248 Iowa 19, 79 N.W.2d 315; Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870; McManis v. Keokuk Savings Bank & Trust Co., 239 Iowa 1105, 33 N.W.2d 410; O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412; In re Estate of Winkler, 232 Iowa 930, 5 N.W.2d 153.

(b) The IPERS statute provides in § 97B.51(5), Code 1973:

A member may elect to receive a decreased retirement allowance during his lifetime with a death benefit after his retirement date equal to the excess, if any, of the accumulated contributions by the member and employer as of said date, over the total monthly retirement allowances received by him under the retirement system. Such death benefit shall be paid to his beneficiary.

Section 97B.44 authorizes a member to designate and to change his beneficiary:

Each member shall designate on a form to be furnished by the commission a beneficiary for any death benefits payable hereunder on the death of such member. Such designation may be changed from time to time by the member by filing a new designation with the commission.

█ Pursuant to these sections, Mr. Gunsaulis elected to take a reduced pension and designated Harriett Tingler to receive any balance as a death benefit.

Mr. Gunsaulis's acts were effective as to both the certificates and the IPERS balance—apart from any rights possessed by his surviving spouse as such.

II. *Effectiveness As To Surviving Spouse.* A surviving spouse is entitled to a share in the decedent's real and personal property under §§ 633.211 and 633.212 of the Code. See also § 633.240 (right to elect to occupy homestead in lieu of share of real property). The surviving spouse cannot be deprived of a share, or of the right to occupy the homestead, by the decedent's will. §§ 633.236, 633.238, 633.240. Moreover, apart from prenuptial contracts, during the lives of the spouses each spouse has an inchoate right in the other spouse's *real property* which can be terminated only by judicial sale or voluntary relinquishment. §§ 633.212(1), 633.238(1). See also § 561.13 (no conveyance of a homestead valid unless the husband and wife "join in the execution of the same joint instrument").

■ The situation is different, however, with *personal property*. As stated in Samson v. Samson, 67 Iowa 253, 259–260, 25 N.W. 233, 236:

[I]t is in the personal property of which the husband dies seized that the law gives the widow a distributive share. Code [1873], § 2436. But during his life-time she has no inchoate right in such property, and he may make such disposition of it during his life-time as he sees fit. If he sells it, or makes any other disposition of it by which he is divested of the ownership, the wife has no claim upon it after his death. *The law has placed no restriction or limitation on the power of the husband to make such disposition of his personal property during his life-time as he may elect.* (Italics added.)

See also Lunning v. Lunning, 168 N.W. 140 (Iowa). This rule has been extended in Iowa to gifts causa mortis. Vosburg v. Mallory, 155 Iowa 165, 135 N.W. 577. The principle which allows a spouse "to make such disposition of his personal property during his life-time as he may elect" permits him to create a valid joint tenancy in personalty between himself and a third person, under numerous decisions which we will presently cite.

■ The bank certificates and IPERS death benefit involved here were personal property. Harriett Tingler, as surviving joint tenant of the certificates, took full ownership of the bank certificates directly from the bank, rather than from Mr. Gunsaulis; hence no legal rights of Mrs. Gunsaulis intervened. Wood v. Logue, 167 Iowa 436, 441, 149 N.W. 613, 615 ("survivors do not acquire title through the deceased, but by virtue of the deed"). The IPERS death provision was analogous to life insurance and the principle applicable to changing beneficiaries under life policies applies here. An insured having the right to change the beneficiary under a life insurance policy may do so though married; his wife does not have an inchoate right in the policy which prevents him from designating someone else as beneficiary. Stolar v. Turner, 237 Iowa 593, 21 N.W.2d 544; Potter v. Northwestern Mut. L. Ins. Co., 216 Iowa 799, 247 N.W. 669; Metropolitan L. Ins. Co. v. Gray, 290 Mich. 219, 287 N.W. 441. See also Shepherd v. Pacific Mut. L. Ins. Co., 230 Iowa 1304, 300 N.W. 556; Royal Union Mut. L. Ins. Co. v. Lloyd, 254 F. 407 (8 Cir.); 46 C.J.S. Insurance § 1175 at 74. Thus no legal right of Mrs. Gunsaulis intervened as to the death benefit.

On the face of things, therefore, Mrs. Gunsaulis has no legal claim to the certificates or to the death benefit. But the rules relating to the extent of inchoate rights of a spouse do not constitute the whole story. Although our court does not appear to have considered the subject, other courts generally hold that circumstances may exist rendering disposition of assets by a spouse so inequitable as to the surviving spouse as to be impermissible. The outlines of the rights of the surviving spouse in this connection are rather indistinct, and in this case we have no necessity to try to define them or to adopt a position on the subject. The decisions involve two areas: sham transfers and fraud in law. Sham transfers are illustrated by Newman v. Dore, 275 N.Y. 371, 9 N.E.2d 966 (husband transferred nearly all assets in trust shortly before death and retained right to revoke the trust, to control the trustees, and to life income—transfer held legally valid except as to widow and illusory as to her). Fraud in law is illustrated by Sherrill v. Mallicote, 57 Tenn.App. 241, 417 S.W.2d 798 (enumerating factors for determining whether transfer constitutes a fraud on widow), and by Whittington v. Whittington, 205 Md. 1, 106 A.2d 72 (same). See also Annots. 49 A.L.R.2d 521, 39 A.L.R.3d 14; MacDonald, Fraud on the Widow's Share, 3–19 (1960); 41 Am.Jur.

2d Husband & Wife § 205 at 178; 41 C.J. S. Husband & Wife § 20 at 417; 26A C.J. S. Descent & Distribution § 63 at 659.

The trial court correctly concluded that the facts of this case do not render Mr. Gunsaulis's acts impermissible under any of the decisions. The acts of placing the certificates in joint tenancy and designating the IPERS beneficiary were real; they were not sham. As to fraud in law, Mr. and Mrs. Gunsaulis were individuals who had been married before, who had their own respective next of kin, who had acquired their own separate wordly goods, who handled their own finances and savings separately and without communication, and who, toward the end, each set up arrangements to transfer assets at death to blood relatives each desired to benefit. Under the circumstances of this case, we find no fraud in law upon Mrs. Gunsaulis.

We thus uphold the joint tenancy of the certificates. Among the decisions sustaining joint tenancies against attacks by surviving spouses are Holmes v. Mims, 1 Ill. 2d 274, 115 N.E.2d 790; Sturgis v. Citizens National Bank, 152 Md. 654, 137 A. 378; Malone v. Walsh, 315 Mass. 484, 53 N.E.2d 126; Kuykendall v. Kuykendall, 370 Mich. 220, 121 N.W.2d 455; Turbide v. Forest, 358 Mich. 435, 100 N.W.2d 239; Stewart v. Barksdale, 216 Miss. 760, 63 So.2d 108; Matter of Glen, 247 App.Div. 518, 288 N.Y.S. 24; Guitner v. McEowen, 99 Ohio App. 32, 124 N.E.2d 744; Orth v. Doench, 309 Pa. 240, 163 A. 450; Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48; Patch v. Squires, 105 Vt. 405, 165 A. 919.

We likewise uphold the designation of Harriett Tingler for the IPERS death benefit. Moyer v. Dunseith, 180 Misc. 1004, 46 N.Y.S.2d 360, aff'd without op. 266 App. Div. 1008, 45 N.Y.S.2d 126; Gristy v. Hudgens, 23 Ariz. 339, 203 P. 569.

Affirmed.