In re Fenton's Estate.

Fred A. Fenton, Administrator, Appellant, v. Mrs. James E. Bridge et al., Appellees.

**GIFTS:** Inter Vivos—Delivery to Third Party for Donee—Effect.
1 A donor, actually intending to make a gift, may effect a *complete delivery* to the donee by delivering the subject matter of the gift to a third party, with the *intent* that such delivery shall constitute an absolute delivery to the donee.

PRINCIPLE APPLIED: Deceased, an unmarried woman, without direct heirs, had made one deposit of money in a bank in the joint name of herself and nephew, and another in the joint name of herself and a lady friend. In both cases, the deposit was made under an agreement between the joint depositors and the bank that any undrawn balance should be paid to the survivor. The real intent was to ultimately make a gift to the nephew and to the friend of whatever of the money deceased did not use during her lifetime. Deceased also had two other certificates of deposit payable to herself. She duly indorsed these, one to a lodge and one to her sister, they being her desired beneficiaries. *Deceased was taken suddenly and gravely ill, and was hurried to a hospital.* Deceased handed her purse, containing all the certificates, to a friend, and told the friend that the certificates and deposits were all assigned just as she wanted them to be, and exacted a promise from the friend "to care for them." The friend so promised; but, doubting her ability to handle such a matter, she suggested that a mutual friend of theirs be called, and he was called; and thereupon the deceased executed a bill of sale to him of all the certificates, etc., in trust for the same parties to whom they were already indorsed. The deceased died two days later.

*Held*, the delivery of the gifts was complete.

**BANKS AND BANKING:** Deposits—Joint Deposits—Title of Survivor.
2 Whether a joint deposit of funds which belong solely to one of the depositors, under a mutual, written agreement between the bank and the joint depositors that any undrawn balance shall be paid to the survivor, is sufficient to pass title to the survivor, when such survivor is the one who did not own the funds when deposited, *quaere*. (See Sec. 1889-b, Code Supp., 1913.)

GIFTS: Inter Vivos—Delivery—Evidence.  An overwhelming show-
ing of *intent* to make a gift may have very material bearing
on whether what the donor did constituted a delivery to donee.

GIFTS:   Inter  Vivos—Delivery—Superabundant  Effort  to  Effect
Delivery—Effect.  Superabundant effort on the part of a *donor*
to effect the delivery of a gift manifestly will not detract from
a delivery already made.

PRINCIPLE APPLIED:   See No. 1.

JUDGMENT:   Conclusiveness—Non-Parties  to  Proceeding.   The
ownership of property may not be adjudicated against one not
a party to the proceeding.

GIFTS:  Inter Vivos—Delivery of Bill of Sale—Effect.  The actual
delivery of a bill of sale constitutes, for the purpose of effect-
ing a gift, a *constructive* delivery of the property to the gran-
tee-trustee for the use and benefit of the designated donee.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

DECEMBER 21, 1917.

THIS is a controversy over the title and right of cus-
tody of certain personal property owned in her lifetime by
Effie M. Fenton, deceased.  The plaintiff is the duly ap-
pointed administrator of her estate.  The defendants are
alleged donees of the property.  The property consisted, in
the main, of Loan Association certificates, and bank de-
posits evidenced by pass books.  The trial court found for
the defendants, and dismissed the plaintiff's application
accordingly.  The plaintiff has appealed.—*Modified and
affirmed.*

*L. M. Kratz,* for appellant.

*Redmond & Stewart* and *Nichols & Nichols,* for appel-
lees.

EVANS, J.—I. The evidence presents no conflict. Nor do counsel differ materially as to the general legal propositions applicable to the case. The real conflict is over the ultimate conclusion or inference of fact that should be drawn from the evidence as a whole. To put it concretely, the debate concentrates upon the question whether the alleged gifts were consummated by delivery to or for the donees during the lifetime of the donor.

1. GIFTS: *inter vivos*: delivery to third party for donee: effect.

Mrs. Fenton, in her lifetime, was widowed by a divorce from her husband. So far as appears in the record, she had no direct heirs. For a few years before her death, she had lived in Cedar Rapids. She rented rooms, and lived alone. She had means to the extent of a little over $4,000. In the last two or three years of her life, she had indicated in various ways the manner in which she wished to distribute her little estate. She had invested $2,000 thereof in the Perpetual Savings and Loan Association; also $1,000 in the Cedar Rapids Savings Bank, and about $2,000 in the Security Savings Bank. She had consulted with the officers of each of these institutions as to whether she could deposit her investment jointly in her own name and that of another, the same to be payable to either joint payee, and wholly payable to the survivor. Her purpose in making such inquiry was to make each of the persons named by her as the joint beneficiary of any investment, the ultimate recipient of the same, in case he or she survived her. Being advised in each case that this could be done, she proceeded at once to follow the methods prescribed by the depositaries for such purpose. The regulations of each of the savings banks required that, in the opening of such a joint account, a paper should be signed by both persons jointly interested, to be attached to the pass book. The deposit which she proposed to make in the Security Savings Bank was to be to the joint account of herself and Finus L. Lewis. The paper

signed by herself and Lewis and delivered to the bank was as follows:

"Fenton, Effie M., and Finus L. Lewis.

"We hereby agree to the By-laws, Rules and Regulations governing Security Savings Bank, Cedar Rapids, Iowa.

"(Sign here)    Effie M.. Fenton ⎫
"(Sign here)    Finus L. Lewis  ⎬ Joint Account.

"Address, Livingston; Date, Aug. 20.

"Occupation, School boy.

"Relationship, Nephew.

(On the reverse side of card)

"It is hereby agreed and understood by and between the subscribers hereto that the money now on deposit or hereafter deposited with the Security Savings Bank of Cedar Rapids, Iowa, in the name of Effie M. Fenton and Finus Lewis, is the common property of the undersigned, and said bank is hereby authorized and directed to pay all or any part of said deposits to either of said parties during their natural lives, or to the survivor of either of them after the death of either, it being understood and agreed between the undersigned that, upon the death of either subscriber hereto, any sum remaining in said joint deposit shall immediately become and be the sole property of the survivor of them, and said bank is hereby authorized and directed to pay the same to said survivor or order.

"(Signed)  Effie M. Fenton

"Finus Lewis"

At the time of the death of Mrs. Fenton, about $1,300 residue was left in this joint account. Another joint account was opened in the Cedar Rapids Savings Bank with a deposit of $1,000, Mrs. James E. Bridge being the other beneficiary of this account. A paper like the above was likewise signed in connection with the opening of this account. The investment in the Perpetual Savings and Loan

Association was in the form of an account and a certificate, which entitled her to a dividend upon the earnings of the company. She had two accounts and certificates of $1,000 each. On the back of one of these certificates, she executed an assignment to the Eastern Star Home of Iowa, and on the back of the other, a like assignment to her sister, Helen Guenthner. These assignments were noted by some form of memorandum upon the books of the loan association. This was the condition of the certificates at the time of her death. In March, 1906, she was suddenly taken very ill. A doctor being called, her condition was regarded as very grave, and she was hurried to the hospital. She was accompanied by Mrs. Griffith, at whose home she roomed. Both Mrs. Fenton and Mrs. Griffith were members of the Eastern Star. Up to the time of her illness, Mrs. Fenton had possession of all her certificates and pass books. At the time of her removal to the hospital, they were all contained in her "purse." When taken to the hospital, she turned over to Mrs. Griffith her purse and its contents, with certain instructions testified to by Mrs. Griffith as follows:

"Q. Do you know what property Mrs. Fenton had at the time of her death? A. All I can say is, that this noon when we took Mrs. Fenton to the hospital, she turned over to me her purse, and told me that I was to take care of it; and then in our conversation she said: 'These things have been all assigned just as I want them to go, and my furniture I want to go to the Eastern Star Home, if they care for it,—if they don't care for it, then you make such disposition as you and Mrs. Bridge see fit.' And she took my hand, and said: 'You will do all these things for me, as a sister of the Eastern Star,' and I said: 'I certainly will.' Q. Now, what was in the purse, if you know? A. There were these four pass books, that have been under discussion, —two bank books and the two books from the Perpetual,— and a watch, and her purse, having $7 and some odd cents;

and the papers are all right there that were in it. * * * Q.
You may state what you did with that purse and its con-
tents.  A.  Mrs. Fenton wanted me to handle this trans-
action for her, but I didn't think I was competent; so I
advised her to have our patron, John Burianek, take charge
of it for her.  She said: 'That is perfectly agreeable with me,
because I think a great deal of John Burianek.'  Then this
document was drawn up, and naturally, when she died, I
turned these things over to him."

Pursuant to the suggestion of Mrs. Griffith, as above
testified to, Burianek was sent for.  Being advised by Mrs.
Fenton of her wishes, he sent for an attorney.  Thereupon,
the following written instrument was executed by Mrs.
Fenton, in the presence of three subscribing witnesses, and
the same was delivered to Mr. Burianek:

"For value received, and good and sufficient consider-
ation I, Effie M. Fenton, of Linn County, Iowa, hereby sell,
assign, transfer and set over unto John Burianek, Jr., all
my right, title and interest in and to all personal property
that I now own in Linn County, Iowa, or wheresoever sit-
uated, and especially all the personal property hereinafter
described in particular, to wit:

"All money now in savings account at Security Sav-
ings Bank of Cedar Rapids, Iowa, and all accumulated in-
terest on said account, which account is approximately
$1,300.  All money now in savings account at Cedar Rapids
Savings Bank of Cedar Rapids, Iowa, and all accumulated
interest thereon, which account is approximately $1,000.
All money now in the Perpetual Savings & Loan Associa-
tion of Cedar Rapids, Iowa, in account Number 2890, and
all accumulated interest or dividends thereon, which ac-
count is approximately $1,000.  All money now in the Per-
petual Savings & Loan Association of Cedar Rapids, Iowa,
in account Number 2891, and all accumulated interest or
dividends thereon, which account is approximately $1,000.

One promissory note for $150 made by Myrl Bridge and his mother. All personal effects, furniture, piano.

"All said property is sold, assigned and transferred to the said John Burianek, Jr., however, in trust, as follows:

"The account in the Security Savings Bank, and interest, is to be paid over to my nephew,...... Lewis of Livingston, Montana, his full name being designated on my pass book of said bank. The account in the Cedar Rapids Savings Bank is to be over to Mrs. James E. Bridge of 820 South 8th St. West, Cedar Rapids, Iowa, after first paying all expenses and indebtedness against me or my estate. The account in the Perpetual Savings & Loan Association of Cedar Rapids, Iowa, No. 2890, is to be paid over to the Eastern Star Home, of Boone, Iowa. The account in the Perpetual Savings & Loan Association, No. 2891, is to be paid to Mrs. Helen Genther,......New York. The promissory note of $150 is to be transferred and become the property of Mrs. James E. Bridge of Cedar Rapids, Iowa. The furniture and piano is to be delivered to the Eastern Star. Home of Boone, Iowa, as its property absolutely.

"Dated this 22nd day of March, A. D. 1916.

"(Signed) Mrs. Effie Fenton.

"Witnesses: (Signed) M. L. Spencer, Flora A. Laird, Elizabeth W. Griffith."

Mrs. Griffith continued in the actual possession of the purse and its contents until after the death of Mrs. Fenton, which occurred a couple of days later. The foregoing constitute the salient facts.

The parties agree upon the general legal proposition that proper proof of a gift must show: (1) Intention to make a gift; (2) an actual consummation of the gift by delivery.

The intention to make a gift is proved in this case beyond debate: whether it was consummated by delivery is the question. The appellant contends strongly that no de-

livery was shown.  The basic proposition upon which appellant builds a very forcible and plausible argument is that Mrs. Griffith and Burianek were mere agents of Mrs. Fenton herself, and that delivery to them or to either of them was not a delivery to the donee.  None of the donees were present at the time of the transactions testified to, and there was no actual delivery, in a personal sense, to any of them.  We shall, therefore, give no consideration to the question of a gift *causa mortis,* but will confine our inquiry to the question whether there was a gift *inter vivos.*

It is well settled that, for the purposes of a gift *inter vivos,* the necessary delivery may be constructive and symbolic, and also that delivery may be made to a third person for the donee. . The question here involved had considerable consideration by us in *Tucker v. Tucker,* 138 Iowa 344.  In that case, we said:

"Nor is delivery directly to the donee essential to a gift.  The rule is well settled that delivery to a third person, as agent or trustee for the use of the donee, and under such circumstances as indicate that the donor relinquishes all control over the property and intends to vest in the donee, is quite as effectual as manual delivery directly to him.  See *Furenes v. Eide,* supra; *Hogan v. Sullivan,* 114 Iowa 456; cases collected in 20 Cyc. 1198.  If the gift is absolute, the mere postponement of the enjoyment until the death of the donor is not material, and will not defeat it. *Schollmier v. Schoendelen,* 78 Iowa 426; *Hogan v. Sullivan,* 114 Iowa 456, and cases cited therein; *Scrivens v. North Easton Savings Bank,* 166 Mass. 255 (44 N. E. 251).  In *McNally v. McAndrew,* 98 Wis. 62 (73 N. W. 315), a father indorsed an assignment on certain notes and the mortgages securing them, and gave them to his son, with the understanding the donor was to have the interest on them so long as he lived; and subsequently, the notes were returned to him to enable him to collect the interest, and were found

among his papers at his death. The court sustained the gift, and held the circumstances not to show a revocation. To the same effect, see *Martin v. Martin,* 170 Ill. 18 (48 N. E. 694). In *Calkins v. Equitable Building & Loan Assn.,* 126 Cal. 351 (59 Pac. 30), bank stock was assigned and delivered as a gift, with the reservation of dividends, and the title to the stock was held to have passed. *Davis v. Ney,* 125 Mass. 590 (28 Am. Rep. 272) ; 14 Am. & Eng. Ency. of Law (2d Ed.), 1044.

"The test seems to be whether any interest in the property itself has been retained, as distinguished from the mere use or enjoyment. It is needless to add that, where there has been a completed gift, the mere fact that naked possession has been acquired by the donor for the temporary purpose of enjoying the use only, as for the collection of interest on deposits in a bank, or the dividends on stock therein, as in this case, without intent to reinvest him with title, will not disturb it. *Martin v. Martin,* supra; *McNally v. McAndrew,* 98 Wis. 62 (73 N. W. 315). And, of course, any act of the donor, after a completed gift not consented to or acquiesced in by the donee, will not affect the title in the latter. *Holmes v. McDonald,* 119 Mich. 563 (78 N. W. 647, 75 Am. St. Rep. 430) ; *Jacobs v. Jolley,* 29 Ind. App. 25 (62 N. E. 1028).

"The mere statement of these well-established principles leads to the inevitable conclusion that the gifts of the certificates of deposit and shares of stock were completed. The intention that his sons should have them, and that, in executing the assignments thereof and their manual delivery with such assignments to John A. Tucker with the expressed purpose of giving them, leaves no escape from the conclusion that the gifts were consummated."

To the same effect was *Vosburg v. Mallory,* 155 Iowa 165. It was entirely competent, therefore, for Mrs. Fenton to accomplish a delivery by delivering her certificates and

pass books and assignments to a third person, for the benefit of the donees. The crucial question, therefore, becomes a fact question. In delivering these papers to the third person, did she intend that this should be a delivery for the benefit of the donees, or did she simply intend that they should be held by such bailee as her agent? Did she intend then and there to pass the title by such delivery to the donees, or did she intend to retain the title in herself, and to hold the papers in the hands of her own agent, subject to revocation? It was competent for her to intend either way. Such intention must be ascertained by deduction, in the light of what she said and did; and what she said and did at the time she parted with the actual possession of the property herself must be considered in the light of what she had said and done before.

2. BANKS AND BANKING: deposits: joint deposits: title of survivor.

Turning to her joint accounts at the savings banks, the method adopted was in strict accord with the provisions of the statute (Section 1889-b, Code Supplement, 1913). The joint account and the joint execution of the paper delivered to the bank in connection therewith present a case of a three-sided contract. If it were binding on one, was it not binding on all? The very fact that the bank assumed a liability to the survivor of the joint depositors was itself in the nature of a consideration for the agreement of Mrs. Fenton that the survivor should take the funds. It is an interesting question with us whether the joint agreement was not, of itself, sufficient to pass the title of the funds to the survivor at the death of Mrs. Fenton. We pass that question, however.

3. GIFTS: inter vivos: delivery: evidence.

The fact that the intention to make these gifts is so clearly proved, and the fact that so many formalities were conformed to in order to give validity to the same, must, we think, be given great weight in determining the

final fact as to whether Mrs. Fenton intended her delivery to Mrs. Griffith to be a full and efficient delivery for the benefit of the donees, or the contrary. We think the only fair inference of fact that can be drawn from these circumstances is that she intended by such delivery to do whatever was necessary to consummate her purpose to make a gift. All the circumstances appearing in the record are consistent with that view, and not consistent with the contrary.

4. GIFTS: *inter vivos*: delivery·: superabundant effort to effect delivery: effect.

The question still remains whether the hesitancy of Mrs. Griffith to undertake the responsibility was such a refusal on her part as to destroy the efficacy of the act of Mrs. Fenton. If yea, then the effect of the instrument executed and delivered to Burianek has need of consideration; if nay, such instrument was a mere abundance of caution, and added nothing to the efficacy of what had already been done. It will be noted from the evidence that Mrs. Griffith did, in terms, accept the undertaking. We think her subsequent hesitancy should fairly be deemed as a questioning of her own ability to carry out instructions, and an appeal for release or help. We think, also, that what was subsequently done, in the execution of the formal instrument constituting Burianek as a trustee, was supplemental, and was intended to make more sure the accomplishment of Mrs. Fenton's purpose. It was entirely consistent in spirit with what had already been done, and tended greatly to emphasize the fact that the delivery of the property to Mrs. Griffith was for the benefit of the donees. The importance of this instrument, in that event, is the light which it throws upon the purpose of Mrs. Fenton, by some means and by every means, to effectuate her gifts.

If it be assumed that the delivery to Mrs. Griffith was, for any reason, an incomplete delivery to the donees, then the effect of the written instrument delivered to Burianek as such must be considered. It does not purport to be an

executory agreement.    It purports to be a bill of sale, trans-
ferring the property and the title thereof to Burianek.    If
a consideration be deemed necessary to give it validity
(which we do not hold), then such consideration may be
found in the duties therein imposed upon Burianek as a
trustee, and in his undertaking to perform such duties by
the acceptance of the bill of sale.    Its legal effect was to
transfer the title, and this carried the right of possession.
The delivery of the bill of sale was a constructive delivery
of the property.    It can be conceived that, if Mrs. Fenton,
notwithstanding the delivery of the bill of sale, had retained
possession of her property, and had subsequently refused
to surrender the same, she might raise the question of con-
sideration in defense against the bill of sale.    But she did
not retain the possession of the property.    She had already
parted with that, in a personal sense, and had started it in
the direction of the donees.    If, in this bill of sale, Mrs.
Griffith had been made the trustee, instead of Burianek, the
ground would have been completely covered, in the most
technical sense.    In such case, appellant, in effect, concedes
he could have no standing.    But we think it was not a con-
trolling question whether Mrs. Griffith or Burianek should
be named as trustee.    Be it one or the other, he was still
the trustee for the same donor and the same donee.    Mrs.
Fenton having formally parted with the possession of her
property in advance of making the written instrument, the
instrument was a confirmation of a delivery already made.
She could make no other delivery except a constructive one,
and this was accomplished by the instrument.    It may be
conceded that, if the delivery to Mrs. Griffith and the oral
instructions given to her be regarded as one transaction,
and the bill of sale to Burianek be regarded as another sep-
arate and distinct one, then there is a certain incomplete-
ness in each. But we think they should be deemed as one
transaction, and not two, beginning with the formal deliv-

ery of the purse to Mrs. Griffith, and ending with the delivery· of the bill of sale to Burianek. Though it be true, that, if a purse was delivered to Mrs. Griffith as a trustee for the donees, neither Mrs. Griffith nor Mrs. Fenton could revoke the beneficial ownership thus conferred upon the donees, and that, therefore, any subsequent attempt to make other disposition of the property would be nugatory, yet the bill of sale did not attempt to make other disposition of the property. It only named a different trustee. This was done by the consent and suggestion of the first trustee. Even if she had no power to thus consent, only the donees could complain.

Taking the record in its entirety, the ultimate intention of the donor stands out so prominently and persistently that it would be a very strained deduction for us to say that she did not intend her delivery to Mrs. Griffith to be for the benefit of her donees. We are united in the opinion that, so far as the pass book and certificates are concerned, the judgment of the lower court was right. .

5. JUDGMENT: conclusiveness: non-parties to proceeding.

II. Besides the foregoing property, a piano and a bed are involved. The bed is one which had formerly been owned by Mrs. Fenton, two years or more before her death. It had been in the possession and use of the son of Mrs. Bridge, for two years or more. Mrs. Bridge was examined on the subject by the plaintiff in this proceeding. She testified to her understanding that Mrs. Fenton had given the bed to her son. It is true that she testified also that she could not remember whether she got that information from Mrs. Fenton or from the son. No other evidence was introduced on the subject. No reference was made to it as belonging to Mrs. Fenton, in the bill of sale which she executed, although it might be deemed to be included in the term "furniture." In any event, the question of title to it cannot be adjudicated in this proceeding, be-

cause the adverse party, who has possession thereof, is not a party hereto. The question of the ownership of the bed, therefore, will not be deemed as within the adjudication herein.

6. GIFTS: *inter vivos*: delivery of bill of sale: effect.

As to the piano, there was no delivery to Mrs. Griffith nor to any other person, unless the delivery of the bill of sale to Burianek should be deemed a constructive delivery thereof. The piano was, and had been for a long time, in the actual possession of Mrs. Bridges. She held it, however, only for safe-keeping. The declaration of trust requires Burianek to deliver the piano to the Eastern Star Home. Was the delivery of the bill of sale a sufficient constructive delivery of the piano to effectuate the gift? If the piano had been in the actual possession of the donor at the time of the execution of the bill of sale, even then a manual delivery thereof might be deemed so impracticable as to open the door to a constructive delivery. But the donor did not have the actual possession of such piano. It was in the hands of another. Actual delivery by Mrs. Fenton, therefore, was impossible. Only a constructive delivery was possible. We think the delivery of the bill of sale was sufficient as such.

It is our conclusion, therefore, that, with the modification indicated, the order of the trial court must be affirmed. —*Modified and affirmed.*

GAYNOR, C. J., and LADD, J., concur.

SALINGER, J.—I concur in the result. My disagreement with much of the argument is for reasons which are fully stated in *Meyer v. Stortenbecker*, filed at this sitting (September 30, 1918), and in which I dissented.