CHARLES A. MILLER et al., Appellees, v. FANNY I. WILLIAMS, Appellant.

**GIFTS:** Causa Mortis—Corporate Stock. Testimony reviewed, relative to a gift of a certificate of corporate stock, and held to show a complete and irrevocable delivery to a named party, even though the certificate carried a conditional clause to the effect that said named party should be deemed to own the stock "*if*" said named party survived the original certificate holder.

*Appeal from Marshall District Court.*—JAMES W. WILLETT, Judge.

APRIL 3, 1923.

REHEARING DENIED JUNE 22, 1923.

SUIT in equity, whereby it is sought to adjudicate the question of title to certain five certificates of stock for 10 shares each, of the Iowa Railway & Light Company. The defendant, Fanny Williams, claims the ownership of the stock as a donee from the original plaintiff, Miller. The question presented upon the record is whether there was a completed gift of these certificates. Decree went for the plaintiff, and defendant appeals.—*Reversed.*

*W. T. Bennett* and *J. J. Wilson,* for appellant.

*C. H. E. Boardman* and *F. M. Haradon,* for appellees.

EVANS, J.—On August 27, 1915, Charles A. Miller, the original plaintiff, purchased and paid for the certificates in question. Each certificate was, in part, in the following form:

"This is to certify that Charles A. Miller (and upon his death prior to the decease of Fanny I. Williams, then the ownership shall vest in Fanny I. Williams) is the owner of ten shares of one hundred dollars ($100) each of the seven per cent cumulative preferred capital stock of Iowa Railway and Light Com-

pany, an Iowa corporation, transferable upon the books of said corporation in person or by duly authorized representative upon the surrender of this certificate duly indorsed, and said stock was fully paid in cash to the company when issued and is non-assessable. * * *

"Witness the seal of Iowa Railway and Light Company and the signature of its authorized officers this 17th day of August, A. D. 1915.

"[Signed] William G. Dows, President.
"[Seal]           [Signed] C. S. Woodward, Secretary."

Sometime thereafter, these certificates were all duly delivered by Miller to the donee, with his indorsement thereon. In August, 1919, Miller obtained the possession of the certificates from the donee, pursuant to a written agreement signed by him which purported to protect the rights of the donee against any unfavorable inference by reason of such possession by Miller. He thereafter applied to the corporation for a change in the form of the certificates which should eliminate the name of the donee as beneficiary. The officials of the corporation refused to accede to his request. He thereupon brought this suit.

At the time of the events already stated, Miller was a widower. His wife had died on July 4, 1915. It does not appear from the record that he had any lineal descendants. Mrs. Williams was the younger sister of Mrs. Miller. She had been a member of the Miller family for much of the time since she was six years of age. She was a member thereof at the time of her own marriage. Her married life was brief, her husband having met death in an accident. There were two children of the marriage, a son and a daughter. From that time forth, Mr. and Mrs. Miller, and Mrs. Williams and her two children became one family. Mrs. Miller was for many years an invalid, and was cared for by Mrs. Williams, who also did the housework for the family. For many months before her death, Mrs. Miller had been bedridden and helpless, and Mrs. Williams was her sole nurse. This service was recognized and greatly appreciated by Miller, and undoubtedly furnished a motive for the alleged attempted gift. After the death of Mrs. Miller, the same home was maintained by Miller and Mrs. Williams, under an arrange-

ment by which they divided the household expenses. They lived in a rented house, and Mrs. Williams paid the rent as a part of her undertaking. This family arrangement continued until 1919. The house occupied by them was sold by its owner, and it became necessary for the family to move to other quarters. Mrs. Williams rented another house, but Miller never moved into it. Before Mrs. Williams moved, Miller engaged board and lodging at Thorpes'. The record discloses no explanation for this separation, unless it be the fact that Miller was married, a few weeks later. The wedded couple made their home at Thorpes' until the death of the wife, which occurred in February following. Thereafter, Miller died, and is represented herein by his executor. From this background, we must determine whether the delivery of the certificates by Miller to Mrs. Williams was done with intent to make complete his intended gift.

I. The argument for appellee is predicated largely upon the form of that part of the certificates above. set forth whereby Mrs. Williams is made the payee in the event of her survival of Miller, and takes little account of the later delivery of the certificates. The argument is that the provision included in the certificate was a mere attempt to make a bequest, and was incomplete as a present gift, because of conditions attached to it. Ignoring, for the moment, the later delivery, the question thus presented is an interesting one, and would not be easy of solution, if the case had to turn upon it. If the paper under consideration had been a mere written promise by Miller to Mrs. Williams, without consideration, it would doubtless be ineffective, either as a bequest or as a gift. But the paper is something more than this. It is a contract with a third party, by which such third party has bound itself to Mrs. Williams, as the owner of such certificates, in the event of her survival of Miller. See *Meyer v. Stortenbecker,* 184 Iowa 441.

In the case of *In re Fenton's Estate,* 182 Iowa 346, we gave some consideration to this question, without directly passing upon it. In view of our conclusion herein on the question of actual delivery, we have no occasion to give consideration to this question.

II. Was the gift complete by actual delivery *in præsenti?* That there was a delivery in form is without dispute in the

record. The challenge to it is that it was not made with intent to complete a present gift; that, on the contrary, the conditions appearing upon the face of the paper inhered as a condition to the delivery. The record discloses no other reason for the delivery than the purpose to make effective a present gift. There was nothing in the form of the certificates which entitled Mrs. Williams to the *exclusive* possession, if to any possession at all, during the life of Miller. Nor was there anything therein which forbade Miller to release all his interest in the certificates during his life, and to transfer the same absolutely to Mrs. Williams. This he could have done by delivery, without indorsement. *Smith v. Meeker,* 153 Iowa 655. But he did indorse the certificate. This only emphasized the evidence of his intent to complete the gift. *In re Estate of Wearin,* 167 Iowa 540. Delivery is a question of intent, to be determined from all circumstances. It may be even symbolical or implied. *Vosburg v. Mallory,* 155 Iowa 165; *Farmers' & Traders' Bank v. Haney,* 87 Iowa 101; *Newton v. Bealer,* 41 Iowa 334.

Four witnesses testified to as many conversations with Miller, wherein he told the witness that he had given this stock to the defendant. When Miller obtained possession of the certificates from Mrs. Williams, on August 23, 1919, he obtained them under the following signed stipulation:

"This is to certify that Charles A. Miller hereto caused to be issued Certificates Nos. 2050 to 2054·inclusive for ten (10) shares each of the 7 per cent preferred capital stock of the Iowa Railway and Light Company, said certificates being issued as follows: 'Charles A. Miller (and, upon his death prior to the decease of Fanny I. Williams, then the ownership shall vest in Fanny I. Williams), 107 Center Street, Marshalltown, Iowa.' And said certificates were by said Charles A. Miller *duly delivered* to the said Fanny I. Williams, and the said Charles A. Miller, having requested the return of said certificates to him, does hereby acknowledge and agree that by returning said certificates to him the said Fanny I. Williams does not surrender, impair or release any interest which she may have in said stock, but that her right in said stocks shall be the same as if the said Fanny I. Williams had retained possession of said certificates

and had not returned said certificates to said Charles A. Miller, and said Fanny I. Williams by making delivery as stated does not consent to any change, alteration in *assignment* of, or reissue of said certificates, or the stock represented thereby.

"Charles A. Miller.

"Dated at Marshalltown, Iowa, this 23rd day of August, 1919."

It will be noted that this stipulation recites that the certificates had been "duly delivered to the said Fanny I. Williams." It will be noted also that the foregoing paper fully preserves the rights of Mrs. Williams, and that, for the purpose of this controversy, her rights are the same as though she had continued in the exclusive possession of the certificates up to the time of the trial. We do not overlook a statement in appellee's argument that the indorsements of the certificates by Miller were made after he had repossessed them, in 1919. This statement is based upon the testimony of the witness McGuire, an official of the Iowa Railway & Light Company, as follows:

"These certificates were bought with the purpose of securing a transfer to him. He had not written his name on the certificates at that time."

There is no direct evidence in the record as to when the indorsements were actually written. Haradon, the executor, testified as follows:

"The indorsements on the back of Exhibits A, B, C, D, and E are written by Charles A. Miller. It was made there before I started proceedings in this case."

The certificates, with their indorsements, were put in evidence by the plaintiff without any qualification or explanation. The stipulation which we have quoted above, signed by Miller on August 23d, was also put in evidence by the plaintiff. This stipulation expressly forbade Miller from making any change or "alteration in assignment * * * of said certificates." This paper carries the clear implication of an existing assignment. On the back of each certificate was a printed blank form of assignment. The signature of Miller was placed under said assignment. No reason is apparent in the record why Miller should sign such assignment, or even indorse the certificates, after repossessing himself thereof. His real purpose in obtaining such

possession was to revoke his gift, although he did not disclose that fact to Mrs. Williams.

We reach the conclusion that the plaintiff had accomplished a complete and irrevocable gift to Mrs. Williams. The decree of the district court must, accordingly, be reversed.—*Reversed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.