IN RE ESTATE OF ADELIA A. HANSON.

IN RE APPLICATIONS OF A. M. HAUSER et al., Appellants.

MARCH 13, 1928.

*J. C. Campbell* and *M. F. Condon,* for appellants.

*W. H. Scott* and *Sager & Sweet,* for estate of Adelia A. Hanson, appellee.

ALBERT, J.—The facts in this case, which are not seriously in dispute, are as follows:

In the early part of the year 1925, the deceased, Adelia A. Hanson, appeared at the Commercial Trust & Savings Bank of Charles City, with something over $3,000 in currency. She  wished to buy government bonds in the amount of $2,000, to be registered, and payable in cash on her death as follows: $1,000 to Nellie Mae Miller; $500 to Eldon Paul; and $500 to Raymond Paul. By reason of certain government regulations, these bonds could not be registered in the way she wished, but were finally registered in the following form: Two bonds of $500 each were payable to "Mrs. Adelia A. Hanson or Nellie Mae Miller or the survivor;" two bonds of $500 each were payable as above set out, except that in one, Raymond Paul, and in the other, Eldon Paul, were named with Mrs. Hanson, as payees. The balance of the money, amounting to $1,035.75, was deposited in the Commercial Trust & Savings Bank, the account (No. 2551) in the bank records reading: "In Account with Mrs. L. P. Hanson or in case of her death payable to Clara L. Paul." The cashier testifies that:

"She wished to have the amount deposited in the savings bank as a joint account, so that, in case of her death, Mrs. Paul would get the money. In response to her directions, I had her sign up a signature card, authorizing us to turn the money over to Mrs. Paul in case of her death. This card is as follows: 'Your bank is hereby authorized to pay all the balance on deposit in Account No. 2551 to Mrs. Clara L. Paul, her heirs or executor in case of my death, her signature appearing herewith.' This card was signed by Mrs. Hanson and Mrs. Paul."

The cashier further testifies that the bank held this money in such a way that it would be necessary to have the signature of both, to withdraw any money from the account.

The bonds were delivered to Mrs. Hanson, and she retained them in her possession until she became ill, in July, 1926, when she decided to go to Charles City for treatment. She then requested a neighbor, Mrs. C. H. Miller, who seems to have been a very intimate and life-long friend, to take possession of a certain metallic box which contained these bonds, and the pass book for her deposit in the savings bank, and keep them until she came back. After going to Charles City for treatment, she returned to her home, and her illness continued to the date of

768

her death, August 27, 1926. Mrs. Miller was an attendant at her bedside, and she testified that Mrs. Hanson at one time said to her: "I have arranged with Mr. Hauser, and he is the trustee." Mrs. Miller further testified:

"She said, a little while before she died, a couple of days or so, 'I am afraid, Mrs. Miller, I will have to leave you the box, but all you have to do is to take it to Mr. Hauser, and not tell it to any person. I have instructed him what to do with it. This is my belongings, and I have instructed Mr. Hauser what to do with it.' This was said about two days before she died, and again the same day she died. I was with her all that evening, and she repeated again about the box. I delivered the box to Mr. Hauser about thirty-six hours after she died."

Mr. Hauser testified, with reference to the bonds and money:

"She asked me to obtain the bonds according to the instructions, and turn them over to her. The instructions were to make them payable to herself and those other parties, as the bond read, and in event of her death, they were to be turned over to the parties by me, the same as the deposits."

After the death of Mrs. Hanson, her executor and his attorney appeared at the bank, and requested that the box be opened. The key to the box was found among the personal belongings of Mrs. Hanson after her death. The box was opened, and in it were found the pass book for this savings account, and three envelopes, one addressed to Eldon Paul, one to Raymond Paul, and one to Nellie Mae Miller. These envelopes were stamped with uncanceled postage stamps. The one addressed to Nellie Mae Miller contained two of the bonds above described, and the one addressed to Raymond Paul, and the other to Eldon Paul, each contained the $500 bond above described. The bank, on demand of the executor of the estate of Mrs. Hanson, turned these bonds over to him, with the understanding that the court should determine the future disposition of the same. These respective parties are now demanding their bonds from the executor, as stated, and the bank is asking for an order for disposition of the funds in its hands. These two questions will be treated separately.

The first question is, Who is entitled to the possession of these bonds? The only real dispute between the parties is

whether or not there was such a delivery of these bonds that they come within the rule governing gifts *causa mortis.*

In the case of *Stokes v. Sprague,* 110 Iowa 89, we said:

"Three things are necessary to such a gift: (1) It must be with a view to the donor's death; (2) the donor must die of that ailment or peril; (3) there must be a delivery."

As to the first two propositions, there can be no dispute in this case. The real bone of contention between the parties is as to the delivery.

It is a settled proposition of law that, under these circumstances, a delivery may be made to a third person for the benefit of the donee, and when this is done, the requirements necessary to a gift *causa mortis* have been satisfied. *Stokes v. Sprague,* supra.

The real question underlying this proposition is whether the donor parted with the title to the property. If she did, then, under the circumstances in this case, the gift was complete. Many cases have been cited to us on these propositions, and in some of the cases the question is discussed on the theory of agency, and whether or not the third party was the agent of the donor or the donee. Other cases discuss it on the question of a trusteeship, but in *In re Estate of Podhajsky,* 137 Iowa 742, we said:

"It is immaterial whether we call the transaction now under consideration a gift by the deceased to his daughters or a trust established by him for their benefit. Indeed, a voluntary trust is simply a device by which a donor effectuates a gift either of property or its beneficial use and enjoyment to the designated donee. Even a gift *causa mortis* may be effected by a delivery to a third person in trust for the donee, although the gift does not come to the knowledge of the donee, and is not accepted by him, until after the death of the donor. The acts of the trustee or third person receiving the property for the benefit of the donee are deemed to be in the interest of the latter, and the acceptance of the gift is presumed."

We reaffirmed this doctrine in *Haulman v. Haulman,* 164 Iowa 471.

It seems to be quite well settled that, in the absence of countervailing circumstances, the person to whom delivery is thus made takes the property as the trustee of the intended

donee, and not as agent of the donor. 28 Corpus Juris 694, Note 76. We have announced this doctrine, if not in words, in substance, in *Vosburg v. Mallory*, 155 Iowa 165, at 172; *In re Estate of La Grange*, 191 Iowa 129; *Gould v. Logan*, 198 Iowa 935.

Appellants rely largely on the case of *Stokes v. Sprague*, supra, but the facts in that case do not measure up with the facts in the case at bar. In that case, Mrs. Sprague, the decedent, told a friend who was with her in her last days that there was a certain pocketbook in a certain closet in the house, and directed the friend to take this pocketbook, and after her death to dispose of the contents to certain parties. The pocketbook was not delivered to the friend, nor did she obtain possession of the same until after the death of Mrs. Sprague. Therefore it could not be held in that case that the pocketbook and its contents were delivered to the friend for the benefit of the donees, as it was never in her possession until after the death of Mrs. Sprague. In the case at bar, there can be no dispute about this question. Before the death of Mrs. Hanson, the property had been delivered by her to Mrs. Miller, and a day or so before her death, she directed what disposition Mrs. Miller was to make of the same. This, to our minds, is very satisfactory evidence of a delivery of the property to Mrs. Miller for the benefit of the donees, and the surrounding facts and circumstances unquestionably show that Mrs. Hanson then intended to, and did, part with the title to said property. The testimony shows that she realized that she was *in extremis*, and she did not put any limitations whatever on her directions to Mrs. Miller. We have no hesitancy in holding that the delivery to Mrs. Miller was for the benefit of the donees, and was such a delivery as is required in cases of gifts *causa mortis*.

We do not deem the fact that the box was locked and the key was subsequently found among the possessions of Mrs. Hanson in any way controlling; because, under the testimony, the intent of Mrs. Hanson is quite apparent, when she directed the same to be turned over to Hauser, and said that he knew what was to be done with the same. This is reinforced by the fact that the respective bonds were inclosed in envelopes, sealed, and ready for delivery, and each carried a postage stamp.

We think the inevitable conclusion, under the facts in this

case, and the rules above stated, is that this was a gift *causa mortis* in each case, and that the respective claimants were entitled to their bonds, as claimed.

As to the deposit in the bank claimed by Clara L. Paul, we are equally satisfied that she was entitled to this money. When the deposit was made, the cashier was directed that, on the death  of Mrs. Hanson, the money in this account was to be turned over to Mrs. Paul. The pass book apparently was in the same form as the account, and the bank officials say that the money could not be withdrawn prior to the death of Mrs. Hanson without the signatures of both Mrs. Paul and Mrs. Hanson. The bank also had written authorization to pay this money to Mrs. Paul on the death of Mrs. Hanson, and this was a signed direction by Mrs. Hanson, and carried with it the signature of Mrs. Paul, although the latter was placed thereon subsequent to the signature of Mrs. Hanson. More than this, the box above referred to contained the pass book for this account, the possession of which, under ordinary circumstances, controls the deposit. The delivery of the pass book, under the circumstances related, would complete the gift. This question is elaborately discussed in the case of *Snidow v. Brotherton*, 140 Va. 187 (124 S. E. 182), with an exhaustive note in 40 A. L. R. 1246.

We might say that the facts in this case are sufficiently strong to support this as a gift *inter vivos* under the rule laid down in *In re Estate of Fenton*, 182 Iowa 346; *In re Estate of Stockham*, 193 Iowa 823; *Miller v. Williams*, 195 Iowa 1305.

We conclude, under this record, that Mrs. Paul was entitled to the money on deposit in the Commercial Trust & Savings Bank of Charles City.—*Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.