J. V. Gray, administrator of estate of Lizzie McCune, appellee, v.
Mrs. John Watters, appellant; Henry County Savings
Bank of Mount Pleasant, defendant.

No. 47960.

(Reported in 51 N.W.2d 885)

MARCH 4, 1952.

Thomas F. Bell and Van Allen & Van Allen, all of Mount Pleasant, for appellant.

McCoid & McCoid, of Mount Pleasant, for appellee.

SMITH, J.—The facts are not in dispute. Nor, for that matter, is the law uncertain. The problem here is to determine the applicable law and to draw the correct conclusion from the undisputed facts.

Lizzie McCune, unmarried and without close relatives, died intestate June 29, 1949. Plaintiff, J. V. Gray, was appointed administrator July 11. Defendant Henry County Savings Bank had previously issued her two certificates of deposit, one for $1000 on September 15, 1948, the other for $1509.10, dated December 11, 1948. It is conceded both represented deposits of decedent's own money.

Some four years prior to her death it had been discovered she was suffering from cancer and one arm was at that time amputated. But subsequently the cancerous condition spread over her body and by April 1949 her condition became so critical as to require further treatment and there was further surgery on May 4, 1949. Both operations were at the University Hospital at Iowa City.

Defendant Mrs. John Watters, decedent's close personal friend for approximately twenty-five years, was in frequent contact with Miss McCune throughout, and visited her at her home in Mount Pleasant and at the hospital in Iowa City. They were not related.

On or about Saturday, April 23, 1949, according to Mrs. Watters, decedent gave her the keys to her (decedent's) lockbox at defendant Bank. The same day, late in the afternoon and after

banking hours, decedent telephoned her friend, Miss Michener, an officer or employe of defendant Bank, asking that Mrs. Watters have access to her lockbox and that Mrs. Watters' name be "added" to the two certificates of deposit. Pursuant to this telephone conversation Miss Michener prepared, and that evening took to decedent's residence where decedent in Miss Michener's presence signed, this writing: "I hereby designate Mrs. John Watters to have access to my safety deposit box and to have her name added to my certificates of deposit" (describing them).

On that occasion decedent told Miss Michener that Mrs. Watters had been very good to her, that she could rely on Mrs. Watters to carry out her wishes, that if anything happened to her she wanted Mrs. Watters "to take care of the money for her after she was gone and that she was giving Mrs. Watters instructions as to what to do with the money after she [Miss McCune] was dead * * * that she wanted Mrs. Watters to have access to the lockbox" and her name added to the certificates and that she "did not want any of her relatives to have any of the money represented by the certificates after her death." It is stipulated she delivered one or both the lockbox keys to Miss Michener on that occasion; but Mrs. Watters thinks they had already been delivered to her (Mrs. Watters) before she went to the bank.

This slight discrepancy is immaterial however as undoubtedly two days later (on Monday) Miss Michener called Mrs. Watters to the bank, the certificates were removed temporarily from the box, and Miss Michener added to each, after decedent's own name as payee, the words "or Mrs. John Watters or the survivor" with the notation: "changed 4-23-49." After that they were returned to the box by Mrs. Watters and remained there until after Miss McCune's death.

Mrs. Watters, as "deputy", signed a form (dated April 23) headed "Appointment of Deputy", designating herself "to have access to and control of the contents of" the safe-deposit box of Miss McCune, with the notation "See letter 4-23-49." The blank space for "Signature of Renter" was not signed by Miss McCune.

It is stipulated that the words "or the survivor" were not added to the certificates of deposit upon Miss McCune's instruction but that Miss Michener included them with the *authorized* alteration "because such was often done at the bank and because

in her opinion, unless those words were so added, Mrs. Watters could not carry out the wish of Miss McCune as expressed to Miss Michener to be carried out by Mrs. Watters after Miss McCune's death." It is also agreed the changes in the certificates were not made in Mrs. Watters' presence but after they were made the instruments were handed back to her and by her returned to the lockbox. Thereafter, Mrs. Watters had access to the box and possession of the only two keys but no withdrawals were thereafter made and Miss McCune never subsequently visited the lockbox.

Mrs. Watters was examined in discovery proceedings and her testimony, made a part of the stipulation, confirms the foregoing excerpts except in the immaterial matter of how and when the keys reached her. She says Miss McCune "gave me the key and told me to take the lockbox as my own if she passed away; gave me the key before that even and told me to dispose of the money as she desired * * * in religious ways, to different religious organizations and to her church. Q. Who were those? A. She didn't designate. She told me I could give whatever I wanted to give to any of those organizations, and as much as I wanted to give, so that I would use up all the CDs. Q. And none of it was to go to you personally? A. None of it. * * * Q. And none of that was to be done until after her passing? A. Yes, it could be done while she was living. It didn't make any difference but I didn't start anything. I didn't feel as though I wanted to start in on them until she passed away. She might not pass away soon. * * * She said she had a policy for her funeral expenses. * * * She said she thought the share in her property there—her part—would take care of her expenses [for medical care at Iowa City]. Q. In other words * * * Miss McCune told you that after her death she wanted you to give all the money represented by the certificates to charitable institutions or individuals of your selection and choice, is that right? A. Of my selection and choice but in regard to her own religion too. * * * I knew she went to the same church I did. I knew her very well that way. * * * She said 'I know of no one to leave it to except you and you take care of it and distribute it in the way you think I would want it done for religious purposes'. * * * After her death."

On this record the trial court decreed the certificates of deposit in suit were still the property of Miss McCune at the time of her death and are assets of her estate. Costs were taxed to the estate.

Defendant Mrs. Watters alone has appealed and will be referred to as defendant. She assigns five "propositions relied on for reversal": 1. That the transaction between herself and decedent constituted a gift causa mortis. 2. That a joint tenancy was created. 3. That defendant became entitled to possession as a beneficiary and recipient under contract between decedent and defendant bank. 4. That there was a valid gift in trust. 5. That there was a valid gift inter vivos.

I. We agree with the trial court's finding: "The defendant makes no personal claim to the funds. The proceeds of the certificates were to be distributed 'in religious ways, to different religious organizations and to her [decedent's] church', with Mrs. Watters to select the specific organizations and decide on the amount to each." Defendant testified: "She told me I could give whatever I wanted to give to any of those organizations, and as much as I wanted to give, so that I would use up all the CDs. Q. And none of it was to go to you personally? A. None of it."

II. The decision below is based squarely on the court's conclusion: "The transaction lacks the intentional, present delivery, which is an essential of a gift causa mortis." Flint v. Varney, 220 Iowa 1241, 264 N.W. 277, and Vosburg v. Mallory, 155 Iowa 165, 135 N.W. 577, Ann. Cas. 1914C 880, are cited.

Since defendant's possession of the certificates and her defense here are frankly as trustee and not in her individual capacity, we observe first that the *method* of devolution of title is quite immaterial. Legal title for a "valid gift in trust" can be conveyed to the trustee inter vivos or causa mortis or by any other legal method for transfer of title to a donee personally.

Whether inter vivos or causa mortis there must of course have been delivery, sufficient for a *present* transfer of title. Without this a gift causa mortis, it has been said, would have nothing to distinguish it from a testamentary bequest. Vosburg v. Mallory, supra (155 Iowa at page 168).

But in the case just cited (page 169) it is also said "there may be a constructive delivery in many cases where actual manual tradition cannot be made." And the delivery may be either actual or symbolical. See Carlson v. Bankers Trust Co., 242 Iowa 1207, 1216, 1217, 50 N.W.2d 1, 6, 7.

In a case involving a deed we have said: "Under modern conditions, it is now fairly well settled that there is no inflexible or ironclad formula by which a delivery sufficient to validate or give effect to a deed is to be tested. Whether a given act shall be regarded as a delivery, within the meaning of the law, is to be determined by the proved or manifest intent of the parties." Leighton v. Leighton, 196 Iowa 1191, 1200, 194 N.W. 276, 280.

In Reeves v. Lyon, 224 Iowa 659, 277 N.W. 749, was involved the sufficiency of decedent's delivery of certain $12,000 worth of bonds. Decedent had taken steps to have his niece's name inserted with his own as co-payee, stating to the banker who handled the transaction for him that he wanted the interest during his lifetime and that he wanted his niece, at his death, to cash one $1000 bond for payment of debts and funeral expenses, transfer $5000 to his son if then living or if the son be not then living to divide it among certain specific individuals. Decedent rented a safe-deposit box in the name of his niece, had the bonds placed therein and gave her a key, with the statement she might have access so as to remove the bonds at his death.

We held in that case there was a completed inter vivos gift, saying (pages 666, 667): "In addition to the manner in which these bonds were made payable, we think one of the outstanding things is that A. M. Reeves himself secured a safe-deposit box * * * which he had registered in the name of Florene Lyon and that to [her] he delivered one of the keys. In this box Florene Lyon placed these bonds, and that is where they were at all times, including the time of his death."

There is no substantial factual difference between that case and this as to the question of delivery. Factual details are seldom identical in two cases. In In re Estate of Hanson, 205 Iowa 766, 768, 218 N.W. 308, 309, decedent, being ill, delivered to a friend the box containing the assets in question, saying: " 'I am afraid * * * I will have to leave you the box, but all you have to do is to take it to Mr. Hauser * * *. I have instructed him what

to do with it.'" Mr. Hauser testified: "'The instructions were to make them [the bonds in question] payable to herself and those other parties, as the bond read, and in event of her death, they were to be turned over to the parties by me, the same as the deposits.'"

We held it a completed gift causa mortis, adding (page 771): "We might say that the facts in this case are sufficiently strong to support this as a gift inter vivos under the rule laid down in In re Estate of Fenton, 182 Iowa 346; In re Estate of Stockham, 193 Iowa 823; Miller v. Williams, 195 Iowa 1305."

The same might possibly be said here under the record but it makes no difference by which name we describe the transaction. We are inclined to the belief however that the trust imposed upon the gift was to be carried out after decedent's death notwithstanding Mrs. Watters' understanding to the contrary. Apparently the trial court viewed it as an attempted gift causa mortis.

We think the true rule as to the sufficiency of delivery for the purpose of consummating a gift either inter vivos or causa mortis is well stated in In re Leadenham's Estate, 289 Pa. 216, 220, 137 A. 247, 249: "While the change of possession may be either actual or constructive, it must be such as is consistent with the nature of the property and the situation of the parties. * * * A present gift of the contents of a box in a bank vault, accompanied by a transfer of the key thereto, is, however, valid as a symbolical delivery." This is substantially as stated in Vosburg v. Mallory, supra (155 Iowa at page 169) and seems to be quite universally recognized. 24 Am. Jur., Gifts, sections 27, 28; 38 C. J. S., Gifts, sections 82, 83. We do not think the method adopted must be the *only* possible one. It is sufficient if manual delivery is impracticable or inconvenient. In re Elliott's Estate, 312 Pa. 493, 167 A. 289, 90 A. L. R. 360, 364, citing cases.

The record here shows such delivery. It was "consistent with the nature of the property and the situation of the parties." We think it constituted Mrs. Watters a trustee and not a mere agent. Decedent's purpose was clear and we think the steps she took were sufficient to consummate it.

III. Miss McCune's appreciation of the danger she confronted and her contemplation of possible or even probable death are unquestionable under the record, as is the fact that her death

soon resulted from the very threat that hung over her. "There must be an apprehension of death from some existing disease or impending peril. * * * It is not necessary, however, that the gift be made while the donor is in extremis or moved by apprehension of immediate death when there is no time or opportunity to make a will, or that he be confined to his bed or his room." Williams v. Guile, 117 N. Y. 343, 22 N.E. 1071, 6 L. R. A. 366; Flint v. Varney, supra (220 Iowa at page 1243).

IV. One division of defendant's brief seems designed to meet a contention that the claimed trust is void for uncertainty in designation of beneficiaries of the charity sought to be created. It is not clear that plaintiff urges that claim. However, the possibility of such contention is perhaps implicit in the situation and should be referred to in view of the fact that we treat defendant as a trustee and not in her individual capacity.

The intended trust is of course charitable (In re Durbrow, 245 N. Y. 469, 157 N.E. 747) and as such one toward which equity adopts a liberal attitude. Hodge v. Wellman, 191 Iowa 877, 883, 179 N.W. 534; Wilson v. First Nat. Bk., 164 Iowa 402, 409, 145 N.W. 948, Ann. Cas. 1916D 481. In a quite early case, strikingly similar to the instant case, our court said: "The will does not specifically name the persons or institutions that are to receive the charity. It leaves the beneficiaries to be chosen and named by the person appointed to distribute the charity. It is competent for a testator to bestow a charity upon a person or institution to be chosen or named by a trustee or executor. In that case, there is no uncertainty of the beneficiary. * * *. Wills providing for the distribution and appropriation of charities in this manner are always upheld by the courts." Quinn v. Shields, 62 Iowa 129, 141, 17 N.W. 437, 442, 49 Am. Rep. 141, citing Perry on Trusts, §731, 2 Redfield on Wills (2 Ed.) 530–535, and a long array of decisions from other jurisdictions.

We have consistently adhered to that rule. In Beidler v. Dehner, 178 Iowa 1338, 1342, 161 N.W. 32, 34, after conceding that decisions may be found the other way, we say we have "given our adhesion to the more just and reasonable rule" that a charitable devise will not "be set aside because of indefiniteness as to the individual beneficiaries, if the class to be benefited is designated with any reasonable degree of clearness, or the power

or authority is expressly or impliedly given to a trustee or other person, to appoint or designate the members of such class. Such gifts, we have said, appeal to the favor of the law, and the courts will give them the benefit of the most liberal rules within the allowable limits of chancery jurisdiction." See 14 C. J. S., Charities, section 40; 10 Am. Jur., Charities, sections 31, 94.

V. We are mindful of the burden of proof under which defendant labors to establish the facts necessary to show the claimed gift. We think the evidence sufficient. Defendant's sole interest is to perform the duty of trustee placed on her by her friend. There is no taint of selfishness suggested in the relationship of these two ladies and in the transaction affecting these certificates.

We hold there was a completed devolution of legal title to her in trust for the religious and charitable purposes indicated by the terms of the gift. It will be her duty to select the beneficiaries and determine the amount to be paid to each and to make due accounting to the court of her performance of the trust.

The decision of the trial court is to that end reversed and the case remanded for that purpose.—Reversed.

All JUSTICES concur.